[No. B121155. Second Dist., Div. Three. Nov. 30, 1999.]

In re IVAN T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
IVAN T., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to *California Rules of Court,* rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III B. and C.

## COUNSEL

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Robert R. Anderson, Acting Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## KITCHING, J.—

I

The issue in this case is whether a juvenile court may retain jurisdiction over a minor with regard to an earlier offense when it then determines the minor is unfit to be dealt with under the juvenile court law for purposes of a subsequent offense. We find that pursuant to Welfare and Institutions Code section 707.01, subdivision (a)(1), a juvenile court may retain such jurisdiction.[1]

Ivan T. was 14 years old when the juvenile court declared him a ward of the court and placed him at home on probation by reason of his having committed voluntary manslaughter. Approximately two years later, the People filed additional petitions alleging Ivan T. committed assault, robbery and burglary. The People further alleged Ivan T. was unfit to be dealt with under the juvenile court law. The juvenile court found Ivan T. an unfit subject for the juvenile court and ordered the matter transferred to adult criminal court. There, a jury found Ivan T. guilty of robbery and burglary and the trial court sentenced him to state prison. Based on Ivan T.'s criminal convictions, the People filed a supplemental petition alleging he had violated the terms of probation granted in the voluntary manslaughter case. The

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

juvenile court sustained the allegations, found Ivan T. in violation of probation and ordered him committed to California Youth Authority (CYA). Ivan T. appeals from the juvenile court's order.

In the published portion of this opinion we rely on section 707.01 to conclude the juvenile court properly retained jurisdiction over this matter after having declared Ivan T. unfit to be dealt with under the juvenile court law for purposes of a later petition. Subdivision (a)(1) of section 707.01 provides that when a minor is found unfit to be dealt with under the juvenile court law, the juvenile court's jurisdiction with regard to any previous adjudications which did not result in commitment to CYA "shall not terminate" unless a proper hearing is held. No such hearing was held here. We further conclude that, to the extent *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463] and *In re Richard C.* (1994) 24 Cal.App.4th 966 [29 Cal.Rptr.2d 506] are inconsistent with section 707.01, the statute supersedes them.

In the unpublished portion of the opinion, we determine the juvenile court properly issued a nunc pro tunc order revising a previous order in which it had terminated its jurisdiction. Since the original order was contrary to law, the juvenile court could properly correct it. We also conclude the juvenile court's determination Ivan T. would benefit from commitment to CYA and that less restrictive alternatives would be ineffective or inappropriate is supported by the evidence. We affirm the order of wardship.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Original Juvenile Court Proceedings.*

In June of 1994, Ivan T. and a fellow member of the Citron Street Gang were walking down an Orange County street. They approached the victim and asked him where he was from. When the victim replied he was from "F.O.L.K.S.," Ivan T., his companion, and the victim began to argue. As the argument progressed, Ivan T.'s companion pulled out a gun and fatally shot the victim. The People filed a petition in Orange County Juvenile Court alleging Ivan T. committed voluntary manslaughter, during the commission of which a principal was armed with a firearm (Pen. Code, §§ 192, subd. (a), 12022, subd. (d)). The juvenile court sustained the petition, declared Ivan T.

a ward of the court (§ 602), and ordered him placed at "home on probation." The matter was transferred from Orange County to Los Angeles County on November 8, 1996.

## B. *The Criminal Court Proceedings.*

During the early morning hours of December 6, 1996, Ivan T. and two companions were in a car in Los Angeles County. At approximately 5:00 a.m., they got out of the car, ran toward Winston Kaya and began to hit and kick Kaya, knocking him to the ground. When Kaya managed to stand up, Ivan T. and one of his companions pointed a knife and a gun at him. While holding the weapons close to Kaya's body, Ivan T. and his companion removed Kaya's wallet from his pants pocket. Ivan T. and his companions then got back into the car and drove off. As a result of this incident, the People filed a section 602 petition in Los Angeles County on December 9, 1996. The petition alleged Ivan T. committed second degree robbery (Pen. Code, § 211) and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). On December 27, 1996, the People filed a second section 602 petition in Los Angeles County. This petition alleged Ivan T. had committed second degree burglary of a vehicle on November 6, 1996. (Pen. Code, § 459.) It was further alleged Ivan T. was "not a fit and proper subject to be dealt with under the juvenile court law, and [that] the People [would] move the court to so order."

On January 2, 1997, the juvenile court found Ivan T. to be not a fit and proper subject to be dealt with under the juvenile court law. (§ 707.) The court dismissed the Los Angeles County petitions "without prejudice" and referred the matter to the district attorney for prosecution. A jury found Ivan T. guilty of robbery and burglary in criminal court on March 4, 1997. The trial court sentenced Ivan T. to a term in state prison.

## C. *The Supplemental Petition.*

On May 1, 1997, the People filed a supplemental petition in the juvenile court pursuant to section 777. The petition alleged Ivan T. had violated conditions of probation which had been imposed following the juvenile court's finding he committed voluntary manslaughter. In suffering criminal court convictions of robbery and burglary, Ivan T. had violated the condition that he "obey all laws." In the supplemental petition the People requested that the previous disposition of "home on probation" be vacated and a new order entered placing Ivan T. at CYA.

On May 5, 1997, Ivan T. admitted having suffered the alleged robbery and burglary convictions. The juvenile court found true the supplemental petition and ordered Ivan T. committed to CYA for a period not to exceed 14 years. After he completed his state prison term, Ivan T. was delivered to CYA. Ivan T. filed a timely notice of appeal from the juvenile court's order.

## III

### Discussion

A. *The Juvenile Court Properly Retained Jurisdiction Over Ivan T.'s Prior Juvenile Court Adjudication After Finding Ivan T. Unfit to Be Dealt With Under the Juvenile Court Law.*

Ivan T. contends the juvenile court erred in retaining jurisdiction over his earlier matter after he was found unfit to be dealt with under the juvenile court law. The contention is without merit.

1. *The Clear Language of Section 707.01 Governs Ivan T.'s Case.*

Under certain circumstances, a minor alleged to have committed a crime may be found unfit to be dealt with under the juvenile court law. (§ 707.) Once a minor has been found unfit, the question whether and under what circumstances the juvenile court may retain jurisdiction over previously adjudicated, pending, and future petitions is governed by section 707.01. With regard to previous adjudications, subdivision (a)(1) of that section provides in relevant part: "If a minor is found an unfit subject to be dealt with under the juvenile court law pursuant to Section 707, then the following shall apply: [¶] (1) The jurisdiction of the juvenile court with respect to any *previous adjudication* resulting in the minor being made a ward of the juvenile court that did not result in the minor's commitment to the Youth Authority shall not terminate, unless a hearing is held pursuant to Section 785 and the jurisdiction of the juvenile court over the minor is terminated." (Italics added.)

In interpreting section 707.01, subdivision (a)(1), our task is to "ascertain and effectuate [the] legislative intent. [Citations.] We turn first to the words of the statute themselves, recognizing that 'they generally provide the most reliable indicator of legislative intent.' [Citations.] When the language of a statute is 'clear and unambiguous' and thus not reasonably susceptible of more than one meaning, ' " ' "there is no need for construction, and courts should not indulge in it." ' " ' [Citations.]" (*People* v. *Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

Here, the relevant statutory language is clear. Subdivision (a)(1) of section 707.01 states that once a juvenile has been found unfit, the juvenile court's jurisdiction with respect to any previous adjudication which did not result in CYA commitment *"shall not terminate,* unless a hearing is held pursuant to Section 785 . . . ."* (§ 707.01, subd. (a)(1), italics added.)[2] Ivan T.'s case fits squarely within the terms of section 707.01, subdivision (a)(1). At proceedings held in 1994, the juvenile court declared Ivan T. a ward of the court by reason of his having committed voluntary manslaughter. Rather than commit Ivan T. to CYA, the juvenile court placed him at home on probation. When the juvenile court later found Ivan T. unfit to be dealt with under the juvenile court law, it nevertheless retained jurisdiction over the prior adjudication pursuant to the provisions of subdivision (a)(1). The juvenile court could not terminate its jurisdiction without first holding a section 785 hearing. No such hearing was held in Ivan T.'s case.

### 2. *Section 707.01 Supersedes Prior Inconsistent Case Law.*

Ivan T. asserts the juvenile court violated long-standing principles of juvenile court law in retaining jurisdiction over his voluntary manslaughter case. He directs us to the court's opinion in *In re Dennis J., supra,* 72 Cal.App.3d 755, In that matter, the People filed a number of petitions in the juvenile court alleging Dennis J. had committed various crimes. With regard to one of those petitions, the juvenile court found Dennis J. unfit to be dealt with under the juvenile court law. The People then charged Dennis J. in adult criminal court, where he pleaded guilty to one charge and was granted probation. The juvenile court disposed of the previously filed petitions by committing Dennis J. to the CYA. The appellate court determined the juvenile court had improperly exercised continued jurisdiction over Dennis J. once the court determined Dennis J. was unfit. In concluding the adult court and the juvenile court could not exercise concurrent jurisdiction, the court stated that "[i]n exercising its jurisdiction the juvenile court [could] not treat and rehabilitate a part of the minor while leaving another part to the

---

[2]Section 785 provides in relevant part: "(a) Where a minor is a ward of the juvenile court, the wardship did not result in the minor's commitment to the Youth Authority, and the minor is found not to be a fit and proper subject to be dealt with under the juvenile court law with *respect to a subsequent allegation of criminal conduct, any parent or other person having an interest in the minor, or the minor, through a properly appointed guardian, the prosecuting attorney, or probation officer, may petition the court in the same action in which the minor was found to be a ward of the juvenile court for a hearing for an order to terminate or modify the jurisdiction of the juvenile court. The court shall order that a hearing be held and shall give prior notice . . . .* [¶] (b) The petition shall be verified and shall state why jurisdiction should be terminated or modified in concise language. [¶] (c) In determining whether or not the wardship shall terminate or be modified, the court shall be guided by the policies set forth in Section 202."

rehabilitation processes of the regular criminal justice system. Either the juvenile court or the adult criminal court must deal with the whole individual." (*In re Dennis J., supra,* 72 Cal.App.3d at p. 760.)

More recently, the court in *In re Richard C., supra,* 24 Cal.App.4th 966, noted that since *In re Dennis J.,* ". . . the Courts of Appeal have been required to define the extent to which the juvenile court may exercise jurisdiction over a minor . . . at or following a point when the minor is declared unfit for treatment by the juvenile court as to one of several sets of charges." (24 Cal.App.4th at p. 969.) The *Richard C.* court recognized that, although most prior cases "suggest[ed] that a minor treated as an adult for some purposes must be treated as an adult for all" (*ibid.*), "[a]nother line of cases ha[d] limited the implications of *Dennis J.* and its progeny." (*Id.* at p. 970.) From this "melange of decisions," the *Richard C.* court inferred that the *Dennis J.* line of cases stood for "at least two propositions. First, a finding of unfitness followed by a criminal conviction in adult court will deprive the juvenile court of jurisdiction to adjudicate pending and future petitions at least for as long as the adult court continues to exercise jurisdiction. . . . Second, a finding of unfitness in a pending case deprives the juvenile court of jurisdiction to adjudicate other pending cases." (24 Cal.App.4th at p. 971, fn. omitted.).

The *Richard C.* court then determined that neither proposition controlled the case before it. Richard C. had been declared a ward of the court and was on probation when he was charged with rape and found unfit to be dealt with under the juvenile court law. When Richard C. was tried on the rape charge in adult court, the jury deadlocked and the matter was dismissed. Shortly thereafter, the People filed a petition in the juvenile court alleging Richard C. had violated the terms of his probation in his juvenile court case. Richard C. argued that since he had been found unfit, the juvenile court could no longer exercise jurisdiction over him. The appellate court disagreed. The court concluded that ". . . where a finding of unfitness is based on and assumes the truth of the charges against the minor, an acquittal or other dismissal of the charges terminates the jurisdiction of the adult court and reestablishes jurisdiction in the juvenile court to the same extent it existed before the finding of unfitness. Under such circumstances the prior finding of unfitness is no longer inconsistent with juvenile court jurisdiction." (*In re Richard C., supra,* 24 Cal.App.4th at p. 971.)

A reading of the legislative history for section 707.01 indicates the Legislature was well aware of *In re Dennis J.* and *In re Richard C.* when it enacted the statute. One analyst noted that "[u]nder current law, when a

minor is found to be an unfit subject for juvenile court and then is convicted in a court of criminal jurisdiction . . . , he or she will continue to be considered unfit for juvenile court as to any subsequent criminal charges, without further hearing on the matter. [Citation.] [¶] This bill would revise and recast these [laws] . . . ." (Sen. Rules Com., Analysis of Assem. Bill No. 1948 (1993-1994 Reg. Sess.) Aug. 19, 1994.) In a letter to the Governor, the author of the legislation referred to the court's opinion in *In re Richard C., supra,* 24 Cal.App.4th 966, then stated: "[This bill] provides jurisdictional rules for a variety of circumstances not covered by current law relating to minors found unfit for juvenile court. The purpose of this bill is to clarify which court has jurisdiction over a minor who has been found unfit for juvenile court in accordance with what is generally thought to be existing case law. . . . [¶] The measure is designed to deal with the thorny issue of the effect of a finding of unfitness. Case law is all over the lot as to what happens to subsequent and pending petitions when a minor has been found unfit. There are also questions as to the status of a pre-existing wardship when a minor is subsequently found unfit." (Assemblyman Tom Connolly, letter to Governor Pete Wilson regarding Assem. Bill No. 1948, Sept. 7, 1994.)

A reading of the statute and its legislative history indicates the Legislature intended the provisions of section 707.01 to supersede *In re Dennis J.* and *In re Richard C.* to the extent its provisions are inconsistent with those opinions. It is apparent the Legislature wished to provide clear, succinct rules regarding when and under what circumstances a juvenile court must, may, or may not retain jurisdiction over a minor's prior, pending, or new matters.

3. *The Juvenile Court Properly Retained Jurisdiction in Ivan T.'s Case—No Section 785 Hearing Was Held.*

Finally, Ivan T. asserts, although the juvenile court may have had the authority to retain jurisdiction, it erred in doing so. He argues concurrent jurisdiction is neither practical nor just. Within the first month of his parole after serving 15 months in custody, Ivan T. found a job and had regularly reported to his parole officer. He argues the juvenile court's retention of jurisdiction under these circumstances was inconsistent with its prior orders and worked to Ivan T.'s detriment.

Section 707.01, subdivision (a)(1) specifically requires that before the juvenile court may terminate its jurisdiction in a case such as Ivan T.'s, it must hold a hearing pursuant to section 785. Section 785 provides that a

minor's parent, guardian, the prosecuting attorney, or the probation officer may petition the juvenile court for a hearing for an order to terminate jurisdiction. The "petition [must] be verified and . . . state why jurisdiction should be terminated." (§ 785, subd. (b).) The court must then order a hearing after giving proper notice to all interested parties. Further, in determining whether to terminate jurisdiction, the juvenile court must "be guided by the policies set forth in Section 202." (§ 785, subd. (c).)[3] In the present case, at proceedings held on March 27, 1998, counsel for Ivan T. orally requested the juvenile court to terminate its jurisdiction. However, our review of the record reveals no written or verified petition. (§ 785, subd. (b).) Since it does not appear the parties complied with the provisions of section 785, the trial court could not properly terminate its jurisdiction at those proceedings.

### 4. Conclusion.

In enacting section 707.01, the Legislature clearly indicated that in certain well-defined circumstances a juvenile court shall retain jurisdiction over a minor although the minor has for purposes of another matter been found unfit to be dealt with under the juvenile court law. Since Ivan T. fits squarely within the circumstances delineated in subdivision (a)(1) of that section, the juvenile court properly retained jurisdiction in this matter.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[3]Section 202 provides in relevant part: "(a) The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible . . . . When removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes. [¶] . . . [¶] (d) Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor in all deliberations pursuant to this chapter. They shall act in conformity with a comprehensive set of objectives established to improve system performance in a vigorous and ongoing manner."

*See footnote, *ante*, page 624.

## IV

### DISPOSITION

The order of wardship is affirmed.

Croskey, Acting P. J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 1, 2000.