783 A.2d 673

**In re FRANKLIN P.**

**No. 4, Sept. Term, 2001.**

Court of Appeals of Maryland.

Oct. 18, 2001.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

In three juvenile petitions filed in the Circuit Court for Baltimore City sitting as the Juvenile Court,[1] the State of Maryland charged petitioner, Franklin P., with various delinquent offenses. The State then sought to have the Juvenile Court waive jurisdiction[2] for each of these petitions. Petition-

---

**1.** The first petition, No. 900066001, was filed on March 6, 2000. The second petition, No. 900066002, was also filed on March 6, 2000. The third petition, No. 600108007, was filed on April 17, 2000.

**2.** Section 3–801(i) of the Court's Article, in effect at the time this matter was heard below, as relevant to this case, provided: " 'Court', means [a] circuit court for a county sitting as a juvenile court...." Similar provisions currently exist. Thereafter, the statute describes the "jurisdiction" of the "Juvenile Court." Section 3–804, *et seq.* Section 3–817, concerning waiver issues, speaks to the waiver of "exclusive jurisdiction," stating the circumstances in which a juvenile court can "waive jurisdiction."

In light of the statute, and also in light of the language of some of the cases, it has become the practice to speak in terms of *the* juvenile court's "jurisdiction." The Constitution of Maryland, however, does not provide for a separate juvenile court. The Constitution provides that the courts of general jurisdiction are the circuit courts.

Accordingly, a juvenile court, despite the statutory language, is part of the circuit court, and exercises the jurisdiction of that court. In reality, the Legislature's statutory scheme for juvenile causes, whatever the language used, is a process of granting and limiting powers, not, strictly speaking, granting and limiting jurisdiction. The statutes, in

er was fifteen years of age at the time of the offenses charged in the first juvenile petition and sixteen years of age at the time of those offenses charged in the other petitions. He was sixteen years, or older, at the time of the waiver proceedings. On three separate days, July 13, 2000, August 11, 2000, and September 18, 2000, the Juvenile Court held hearings in respect to the waiver of juvenile jurisdiction. On September 18, 2000, the Juvenile Court entered an order waiving juvenile jurisdiction for each of the three petitions.[3] On September 22, 2000, petitioner filed a Motion for Reconsideration of the order waiving jurisdiction.

On October 19, 2000, the Juvenile Court issued an order vacating the previous waiver of juvenile jurisdiction concerning these petitions and ordered petitioner returned to juvenile court jurisdiction. At this point, he was almost seventeen years of age. The Juvenile Court then scheduled an adjudicatory hearing for November 16, 2000; meanwhile, the State had obtained criminal indictments[4] charging petitioner. Due

---

relation to criminal offenses, create a segmentation of the circuit court into two branches or divisions, both still part of the circuit court. The "juvenile court" deals, generally, in respect to criminal matters, with most offenses created by juveniles; the other branch, the criminal court, deals, generally, with offenses committed by adults. But, technically, neither is a separate court with independent jurisdiction.

The Legislature has also addressed certain concerns in respect to waivers from one of the general jurisdiction branches that deal with criminal matters to the other. In a technical sense, albeit the statutory language used is "jurisdiction," what is being waived and transferred is the authority of one branch or division or the other to try the case.

While we recognize the technical distinction, we will, in this opinion, continue to use the terms jurisdiction and authority interchangeably, unless the context indicates otherwise.

3. In addition to the instant events, petitioner had had contacts with the juvenile courts in reference to fifteen prior allegations of conduct that would be criminal if committed by an adult. In eleven instances, the allegations were dismissed. He had been twice committed to the custody of the Department of Juvenile Justice and had been placed on probation on another occasion. He is 6 feet tall and weighs 155 pounds. He is now almost eighteen years of age.

4. The State, by three indictments filed in the Circuit Court for Baltimore City, on October 16, 2000, criminally charged petitioner with

to the existing criminal indictments, the State, apparently believing the authority to try the case was in the criminal court, declined to put on a case at the adjudicatory hearing before the Juvenile Court. The State's failure to put on a case led the Juvenile Court to dismiss the juvenile petitions against petitioner without prejudice.

On February 16, 2001, the Circuit Court for Baltimore City, sitting as a criminal court, heard petitioner's Motion to Dismiss the criminal charges on the ground of lack of jurisdiction. The Circuit Court denied petitioner's Motion to Dismiss finding that the Juvenile Court had lost its jurisdiction upon its order waiving jurisdiction to the criminal court. Specifically, the Circuit Court found that at the time of the waiver of juvenile jurisdiction any further prosecution of the charges vested with the criminal court and that the Juvenile Court had no further authority over petitioner's charges. Petitioner then filed, on February 23, 2001, an interlocutory appeal to the Court of Special Appeals.

■ On our own motion, we granted petitioner's Petition for Certiorari Before Judgment and Motion for Injunction Pending Appeal, prior to a determination by the Court of Special Appeals and enjoined further proceedings in the criminal cases pending the outcome of proceedings in this Court. We also ordered that petitioner be released to the custody of the Department of Juvenile Justice ("DJJ"). On June 6, 2001, this Court directed that this case be treated as an appeal from a court exercising juvenile jurisdiction. This was done under the provisions of Maryland Rule 8–121, for the sole purpose of complying with the confidentiality provisions of the juvenile law. Petitioner presents two questions [5] to this Court:

armed carjacking and eleven related offenses, felony theft, concealment of a deadly weapon, unauthorized use of livestock, and possession of a shank in the detention center.

5. The wording of these two questions above is found in petitioner's Petition for Writ of Certiorari Before Judgment and Request for Expedited Review submitted to our Court. This wording, while substantive-

1. Whether a juvenile court has the authority to rescind an order of waiver of juvenile jurisdiction and, if so, whether the criminal court lacks jurisdiction in this case?

2. Whether an immediate appeal in this case lies under the collateral order doctrine?

We answer the second question in the negative. The Circuit Court's order denying petitioner's Motion to Dismiss for Lack of Jurisdiction is not an immediately appealable order. Moreover, as we discuss further *infra*, the granting of waivers to the criminal court was not intended, by the legislature, to be immediately appealable, even by the indirect method of motions to dismiss in the criminal court following an attempt by the juvenile court to reclaim authority over the case. Here, the collateral order doctrine is not applicable. Because of our answer on the second question, we need not resolve the first question. However, for guidance purposes, and because of the importance of the questions and the probability that, since the question has now arisen, it might arise with some frequency in the future, we will discuss the first issue presented. Because the issue is better addressed in context, we shall also examine the legislative history relating to juvenile waiver appealability, at some length, *infra*.

## I. Facts

Petitioner is diagnosed as seriously emotionally disturbed. He has a history of multiple suicide attempts, a lengthy psychiatric background, and multiple psychiatric hospitalizations. The record before us discloses that petitioner was first hospitalized at eight years of age and has been hospitalized

---

ly the same, was changed in petitioner's brief subsequently submitted to this Court. The questions in petitioner's brief read:

1. Whether a circuit court, sitting as a juvenile court, has the fundamental jurisdiction and authority to rescind an order of waiver of juvenile jurisdiction, and whether, in light of that rescission in Franklin's juvenile cases, the circuit court lacks jurisdiction in the criminal cases?

2. Whether the lower court's order denying Franklin's motion to dismiss the criminal indictment for lack of jurisdiction is an immediately appealable order?

over six times, prior to the present alleged crimes. During petitioner's stays at various treatment programs, he would not follow rules set by the programs, threatened staff or other students, missed appointments, or walked out altogether. In one particular hospitalization, petitioner destroyed property and was unmanageable, causing him to be restrained and medicated. On another occasion, petitioner threatened his teacher with a metal table leg, requiring police to be called. Also, in past educational programs, be it private school, a particular special school or the like, petitioner himself frustrated his progress. Petitioner was easily distracted, provoked his peers, and has had many instances of impulsive, disruptive, and assaultive behavior. Last year, petitioner remained for only one day in the Baltimore City School system. Petitioner has been involved with both Department of Social Services ("DSS") and DJJ.

The Juvenile Court, at the August 11, 2000 waiver hearing in respect to the present charges, requested petitioner be placed in custody of DJJ. The Court requested that a representative of DJJ[6] find a secure and therapeutic setting for petitioner to fulfill his juvenile commitment order. Petitioner was jointly committed to DSS and DJJ.

At the final waiver hearing, on September 18, 2000, the Juvenile Court waived juvenile jurisdiction as to petitioner's juvenile petitions. This ruling came after testimony from the DJJ representative, Ms. Brown, that even though petitioner was amenable to treatment and should be retained in the juvenile system, DJJ was at that precise time unable to place petitioner in an appropriate facility for an extended duration.[7]

---

**6.** The Juvenile Court requested specifically that Ms. Gertrude Brown, a representative of DJJ testifying at the hearing on behalf of DJJ, attempt to find a program for petitioner that included a secure setting, an educational program, and individual psychiatric treatment.

**7.** Ms. Brown testified that petitioner had, in fact, been accepted into two residential treatment programs, and at least one of them was secure, but only available for a brief time. Securing proper treatment for petitioner beyond his eighteenth birthday was a concern for the

When making its ruling, the Juvenile Court stated and refer-
enced the applicable statutory criteria [8] for treating a juvenile

---

Juvenile Court at this hearing, in part due to petitioner's age, complex
and difficult history, and prior failures in rehabilitative type settings.

**8.** Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–817(a)
of the Courts and Judicial Proceedings Article details how the court
may waive juvenile jurisdiction and bring about the juvenile's treatment
as an adult. Section 3–817 reads:

" § **3–817. Waiver of jurisdiction.**
 (a) *How waived.*—The court may waive the exclusive jurisdiction
conferred by § 3–804 of this subtitle with respect to a petition alleging
delinquency by:
 (1) A child who is 15 years old or older; or
 (2) A child who has not reached his 15th birthday, but who is
charged with committing an act which if committed by an adult, would
be punishable by death or life imprisonment.
 (b) *Hearing—Required; notice.*—The court may not waive its jurisdic-
tion until after it has conducted a waiver hearing, held prior to an
adjudicatory hearing and after notice has been given to all parties as
prescribed by the Maryland Rules. The waiver hearing is solely to
determine whether the court should waive its jurisdiction.
 (c) *Same—Notice to victim; victim impact statement.*—(1) Notice of
the waiver hearing shall be given to a victim as provided under Article
27, § 770 of the Code.
 (2) (i) A victim may submit a victim impact statement to the court as
provided in Article 27, § 781 of the Code.
 (ii) This paragraph does not preclude a victim who has not filed a
notification request form under Article 27, § 770 of the Code from
submitting a victim impact statement to the court.
 (iii) The court may consider a victim impact statement in determin-
ing whether to waive jurisdiction under this section.
 (d) *Unfit subject for juvenile rehabilitative measures.*—(1) The court
may not waive its jurisdiction unless it determines, from a preponder-
ance of the evidence presented at the hearing, that the child is an unfit
subject for juvenile rehabilitative measures.
 (2) For purposes of determining whether to waive its jurisdiction, the
court shall assume that the child committed the delinquent act alleged.
 (e) *Criteria.*—In making its determination, the court shall consider
the following criteria individually and in relation to each other on the
record:
 (1) Age of the child;
 (2) Mental and physical condition of the child;
 (3) The child's amenability to treatment in any institution, facility, or
program available to delinquents;
 (4) The nature of the offense and the child's alleged participation in
it; and
 (5) The public safety.

as an adult.[9] The Juvenile Court, having considered the five factors [10] it must consider pursuant to statute, found petitioner unfit for juvenile rehabilitative measures.

 On September 22, 2000, petitioner filed a Motion for Reconsideration of the Juvenile Court's order waiving juvenile jurisdiction over the three petitions. Petitioner's Motion for Reconsideration hearing was held on October 19, 2000, at which time the Juvenile Court issued an order rescinding its waiver order. Again, Ms. Brown offered testimony for DJJ; however, on this occasion before the Juvenile Court, she informed the Juvenile Court that DJJ had changed its position and that

------

 (f) *Procedures.*—If the jurisdiction is waived, the court shall order the child held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult. The petition alleging delinquency shall be considered a charging document for purposes of detaining a child pending a bail hearing.

 (g) *Interlocutory order.*—An order waiving jurisdiction is interlocutory.

 (h) *Child subsequently brought before court on another charge of delinquency.*—If the court has once waived its jurisdiction with respect to a child in accordance with this section, and that child is subsequently brought before the court on another charge of delinquency, the court may waive its jurisdiction in the subsequent proceeding after summary review."

**9.** We note that during the past legislative session the Maryland General Assembly, via 2001 Maryland Laws Chapter 415 section 6, redesignated section 3–817 to be section 3–8A–06 under a new subtitle, "Subtitle 8A. Juvenile Causes—Children Other Than CINAs and Adults" of the Courts and Judicial Proceedings Article. 2001 Maryland Laws Chapter 415 section 7, provides that:

 "this Act does not affect the validity of any proceeding pending on October 1, 2001, and does not affect the release, extinguishment, or alteration, wholly or partly, of any penalty, forfeiture, or liability, whether civil or criminal, which shall have occurred under any statute amended or repealed by this Act and such statute shall be treated as still remaining in force for the purpose of sustaining any and all proper actions for the enforcement of such penalty, forfeiture, or liability and any judgment, decree, or order that can be rendered in such action."

2001 Maryland Laws Chapter 415 section 11, provides that the Act shall take effect October 1, 2001. We are aware of this redesignation, and note that the substance of what will be former section 3–817, as it pertains to the case at bar, has not been altered.

**10.** *See supra* n. 6 section 3–817(e).

petitioner could be placed in an appropriate facility immediately. The Juvenile Court found that DJJ was on this occasion, the October 19, 2000 reconsideration hearing, willing to pay for petitioner's commitment and placement beyond his eighteenth birthday [11] if it was necessary.

The Juvenile Court, attempting to rescind the earlier waiver order, modified the language of the prior juvenile commitment order, and DJJ placed petitioner in a long-term secure residential treatment program. The Juvenile Court stated in its findings at the reconsideration hearing that the "[petitioner] is eligible for an RTC [residential treatment] commitment, [and that DJJ was] willing to pay for such commitment, and, also, their willingness to pay for that placement will extend beyond his 18th birthday, which, again, was a real concern for me [the Juvenile Court] because I believe [petitioner] requires secure, long-term, intensive therapeutic services."

In subsequent criminal proceedings, the Circuit Court for Baltimore City, sitting as a criminal court, exercising its authority over the criminal charges filed against petitioner, heard argument on February 16, 2001 on petitioner's Motion to Dismiss for Lack of Jurisdiction. The Circuit Court denied petitioner's motion, finding that once a juvenile court issues an order waiving jurisdiction to the criminal court, that waiver of jurisdiction is irrevocable. The Circuit Court stated:

"Juvenile Court is a Court of special jurisdiction. It's statutorily created and it's authority is conscribed to the confines of that enabling legislation. If an individual under certain ages, under a certain age is charged with a commission of an act that would be a crime as done by an adult, the Juvenile Court has exclusive original jurisdiction and that jurisdiction is still subject to the Court's ability to determine whether it shall retain that jurisdiction. On many instances

---

11. Again, securing proper treatment for petitioner beyond his eighteenth birthday was a point of concern for the Juvenile Court at the September 18, 2000 hearing where it ultimately found him unfit for juvenile rehabilitative measures, partially due to a lack of a treatment facility.

in recent times the [L]egislature has given itself the authority to determine the Court's jurisdiction. There is no suggestion in this case that the [L]egislature has acted to divest the Juvenile Court of the ability to make a decision on whether it shall determine it's own authority to try a case.

Once the jurisdiction is lodged with the Juvenile Court, the State or the Respondent has the opportunity to present a request for the consideration of whether that jurisdiction should continue in the Court. In this instance, apparently, the State made a request of the Court for it's jurisdiction to be waived and cited as a reason for that a number of different factors. The Court, after conducting a hearing made a determination on its own jurisdiction. That determination was that the Court [the Juvenile Court] shall not exercise its jurisdiction any further and that the Respondent [petitioner] shall become a Defendant who could be charged with the same act but in the criminal divisions of the Court. That was a determination of jurisdiction.

Upon making that decision, it is the opinion of this Court [Circuit Court for Baltimore City, Criminal Division], the Juvenile Court lost the authority to make any further decisions on whether that charge or those charges were subject to the jurisdiction of the Juvenile Court. Jurisdiction for any further prosecution of those charges vested with the criminal divisions of the Court, whether that was the District Court of Maryland or the Circuit Court for Baltimore City, Criminal Division. The division for juvenile causes had no further authority over these charges. It could continue its authority over the child if the child, in a later time, committed an act that would be a crime if done by an adult provided that the [L]egislature had not taken away the jurisdiction of the Court to consider the issue. That does not apply in this circumstance.

You cannot, subsequent to the decision to waive jurisdiction, attempt to reclaim jurisdiction over the ... charge. The decision on jurisdiction has been made and announced. Jurisdiction in this case is lodged in the criminal divisions of

the State's Courts. It is no longer vested in the juvenile divisions of the State's Courts."

## II. Discussion

 We hold that an immediate appeal, in this case, does not lie under the collateral order doctrine. Simply stated, the collateral order doctrine test is comprised of four elements, and in the present case petitioner's appeal does not satisfy those elements. For the guidance of the juvenile and other trial courts, we shall later opine that, generally, juvenile courts do not have the authority to rescind an order of waiver of juvenile jurisdiction. In the case *sub judice*, the Juvenile Court did not have the authority to rescind its waiver order on juvenile jurisdiction over petitioner and an appeal from the Circuit Court's finding of the same is premature.

## PART I

### A. Appealability

### 1. Legislative History of the Appeal Provisions[12]

Former Maryland Rule 913 h provided:

"If an appeal is entered from an order waiving jurisdiction, pending the determination of the appeal, the respondent shall continue to be subject to the jurisdiction of the criminal court with respect to custody and pretrial release...."

The Court of Special Appeals held under the old statute and corresponding rule that a defendant's trial in criminal court was stayed pending a determination of the appeal of the waiver decision although that court retained custody of the defendant. See *Aye v. State*, 17 Md.App. 32, 37, 299 A.2d 513, 517 (1973) ("If an appeal is noted from an order of waiver ..., the criminal court, pending the determination of the appeal has no jurisdiction over the case."). The statutory precursor

---

**12.** The appeal in this case is actually from a denial of a motion to dismiss in the criminal court. We address the appealability of the waiver decision for guidance purposes.

to the rule, evidently, was Maryland Code (1957, 1973 Repl. Vol.), Article 26 section 70–25 titled "Appeals"; it permitted appeals from the granting of a waiver to the criminal courts. It provided: "An aggrieved party may appeal from any final order ... of the juvenile court.... The appeal shall not stay the order ... appealed from...." By 1982, the statutory language of the section relating to appealability had been modified to read:

"(f) An order waiving jurisdiction is immediately appealable."

Md.Code (1973, 1980 Repl.Vol.), § 3–817(f) of the Courts and Judicial Proceedings Article.

In 1982, the Legislature changed the very character of the statutory right to appeal by the provisions of 1982 Maryland Laws Chapter 792. The provisions of the bill adopted (Senate Bill 217), provided in relevant part:

"3–817.

(f) An order waiving jurisdiction is [immediately appealable] INTERLOCUTORY.[13] [Alteration in original.]

Later, by 1987, we had deleted the rule provision first above described. 13 *Maryland Register* 2307 (Issue 21, October 10, 1986). The explanatory note by the Rules Committee stated that the rule was deleted as "no longer is appropriate in light of the statutory change."

That portion of the statute has remained unchanged to the present time. On its face, the 1982 legislative action changing the character of a waiver order from "immediately appealable," to "INTERLOCUTORY," expresses a clear intent that an order waiving juvenile jurisdiction was not intended by the Legislature to be appealable prior to a final order in the

---

**13.** The parties do not contest that the Juvenile Court waived jurisdiction to the Circuit Court. Nevertheless, as we indicated earlier, this matter arises here in the unique posture of the denial of a Motion to Dismiss in the Circuit Court on the grounds that, via reconsideration, the Juvenile Court has, in essence, reversed itself, thereby reclaiming jurisdiction. We perceive it to be necessary to examine what the Legislature intended to be the practice for challenging waivers to the circuit court.

proceedings in the criminal court. Additionally, that interpretation of intent is supported by the legislative history of the 1982 Act.

In 1982, changes in the statute relating to the appealability of waiver decisions by the juvenile court were proposed in the Legislature by House Bill 625 and Senate Bill 217. Both bills apparently passed, but contained certain inconsistencies. House Bill 625 retained a provision that appeals from juvenile waiver orders would remain "immediately appealable" if the child was "committed to custody." Senate Bill 217 contained no such qualifying language. The Attorney General, in respect to the two bills, advised the Governor, as relevant here, that:

"Under existing law, § 3–817(f) of the Courts and Judicial Proceedings Article, an order waiving juvenile jurisdiction is immediately appealable. Senate Bill 217 would make such orders interlocutory. On the other hand, House Bill 625 provides that:

'(1) If a child is released on bail or on recognizance, the order waiving jurisdiction is interlocutory.

(2) If a child is committed to custody, the order waiving jurisdiction is immediately appealable.'

Because the provisions of House Bill 625 and Senate Bill 217 are irreconcilable, we recommend that, if you desire a change in the present law, only one bill should be signed." [14]

The Governor signed Senate Bill 217 into law.

Senate Bill 217 provided in relevant part that "FOR the purpose of providing that an order waiving jurisdiction of the juvenile court is interlocutory." [15] It then contained language

---

14. The copy of House Bill 625 in the microfilm records is of such poor quality that most of it was indecipherable. Accordingly, we have utilized the description of the bill in the Attorney General's letter to discern its relevant language.

15. Even House Bill 625's purpose was, generally, to change the nature of waiver orders from final to interlocutory for appeal purposes. It stated: "For the purpose of altering the status of a court order waiving exclusive jurisdiction of a juvenile court with respect to petitions

stating that, "An order waiving jurisdiction is [immediately appealable] INTERLOCUTORY." While the purpose of the bill is evident from the language of the statute, there is other information relating to purposes and intent in the bill file.

The proponents of Senate Bill 217 included the State's Attorneys' Association, the State's Attorney for Baltimore City, and the State's Attorney for Anne Arundel County; the opponents are listed as the Department of Health and Mental Hygiene, its Juvenile Services Administration, and Mr. Peter Smith of the Juvenile Law Clinic.

We shall first address the reports generated in the legislative process and then that information relating to the position of the opponents, before concluding with the position of the sponsors and supporters.

The "Bill Order" contained in the microfilm file relating to Senate Bill 217, states "FOR the purpose of providing that an order waiving the jurisdiction of the juvenile court is interlocutory." The "Bill Report" provides:

"*S.B. 217—Juvenile Causes—Waiver.*

*WHAT IT DOES:*

This bill provides that an Order waiving the jurisdiction of the Juvenile Court is interlocutory rather than immediately appealable.

*WHY NEEDED:*

The purpose of this bill is to prevent delays caused by the availability of immediate appeals from waiver orders. Currently it takes the Court of Special Appeals from 6 to 8 months to rule on a waiver appeal. Reversals are rare. This bill would require that a juvenile waived to an adult jurisdiction would have to complete his case in the Circuit Court system before he could appeal the waiver question at all.

---

alleging delinquency, so that such an order is interlocutory, rather than immediately appealable."

. . .

Opponents felt that once juvenile jurisdiction was waived, the juvenile would be subject to the adult criminal court system and without the benefit of the juvenile system's protection while awaiting trial."

The Department of Health and Mental Hygiene and its Juvenile Services Administration, explained their position:

"DHMH POSITION: OPPOSE

EXPLANATION:

The Department of Health and Mental Hygiene's Juvenile Services Administration opposes S.B. 217 for several reasons. This bill would preclude the respondent's right to appeal the waiver decision until his case is concluded in the criminal court. This would expose many youth to the adult system prematurely. In cases that are sent back to Juvenile Court, after a successful appeal, these youth have been already exposed to the negative effects of the criminal justice system. In some cases this exposure to the criminal justice system could make treatment in the juvenile justice system much more difficult. Due to the inherently slow nature of processing cases in the criminal justice system, it would be almost impossible to approximate how long it would take to hear a case and subsequently have an appeal on the waiver decision."

A summary of Mr. Smith's testimony opposing the bill, provided, in relevant part: "Legislature ought to require that cases be advanced, in absence of attorneys filing appropriate motions. Result of this bill is to effectively eliminate waiver appeals."

The position of the proponents and sponsors of the bill included the following in the bill file: Senators Miller and Garrity were the sponsors of the bill. Their testimony was summarized: " 'Testimony Summary–1982 Session' Bill S.B. 217, 6–8 months for appeal of waiver decision. This [S.B. 217] would save appeal for final decision." The other proponents' positions were described as:

*"Problem:*

As a dilatory tactic, respondents often note an appeal from a waiver order. Since the code provides in § 3–817(f) that 'An order waiving jurisdiction is immediately appealable,' such appeal halts further action pending appellate review. Utilizing the most recent waiver case available, *In Re Eric B.* (No. 230 September Term 1981), waiver was granted on February 18, 1981. The Court of Special Appeals filed their opinion on October 30th, some eight months and twelve days later. Since the waiver was affirmed, the respondent (turned defendant) will now be scheduled for trial within six months. These pre-trial delays are unacceptable. Responding to this type situation, the General Assembly in 1973 rewrote the law to make 'An order waiving jurisdiction interlocutory', except in Montgomery County, which at the time had its own body of juvenile law. On February 11, 1974, in the case of *State v. Trader,* 20 Md.App. 1, 315 A.2d 528, the Court of Special Appeals found the statute to be unconstitutional on the grounds that it provides different appeal remedies for the citizens of Montgomery County than in the rest of the state. That problem has since been solved but not before the General Assembly changed the law to the current language [providing for immediate appeals].

*Solution:* Add the following language to § 3–817(f).

(f) An order waiving jurisdiction is interlocutory [the words immediately appealable are scratched through]."

▮▮▮ The positions of the proponents and the opponents were clearly before the Legislature when it debated the two bills. Both apparently passed the Legislature; but only Senate Bill 217 was enacted into law. Its language is clear, and its purpose is clear. Appeals of waiver decisions are interlocutory and intended to be resolved after the conclusion of the proceedings in the criminal court trial. Appeals of waiver decisions are not intended to be made before a final decision in the criminal courts, either by direct appeals or by indirect appeals via motions to reconsider at the juvenile court level, with subsequent motions to dismiss at the criminal court level based on lack of jurisdiction, relying on a reconsideration by

the juvenile court after it has divested itself of jurisdiction. While the arguments and positions of both parties in this case, and for that matter, the positions of both sides when the statute was enacted,[16] have merit, the Legislature has resolved the issue and it must be, in the absence of constitutional defects, accepted.

## 2. Collateral order doctrine

We are obligated to hear certain appeals, and we are obligated to explore whether we have jurisdiction of each matter and to halt any proceedings where we find it lacking. Our authority is set forth in Maryland Code (1973, 1998 Repl.Vol.), sections 12–301 to 12–303 of the Courts and Judicial Proceedings Article. Section 12–301 permits appeals from final judgments, while section 12–303 sanctions appeals from certain interlocutory orders. Section 12–303 lists certain interlocutory orders that are immediately appealable. Juvenile waiver orders are not there listed.

Under the collateral order doctrine, our appellate jurisdiction also extends to a narrow class of. interlocutory orders treated as final judgments without regard to the posture of the case. *Harris v. Harris, P.A.,* 310 Md. 310, 315, 529 A.2d 356, 358–59 (1987); *Public Serv. Comm'n v. Patuxent Valley Conservation League,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984). The doctrine is an exception to the final judgment rule. *See Goodwich v. Nolan,* 343 Md. 130, 142 n. 8, 680 A.2d 1040, 1045 n. 8 (1996). It "permits immediate appellate review of a 'small class' of prejudgment orders which 'finally determine claims of right separable from, and collateral to, rights asserted in the action [which are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " *Harris* at 315–16, 529 A.2d at 358–59 (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69

---

16. Some of the arguments made by both parties in the instant case, mirror to a certain degree, the positions taken by the opposing sides in the legislative proceedings.

S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)) (alteration in original). It is a doctrine that is to be applied "only sparingly." *Sigma Reprod. Health Ctr. v. State,* 297 Md. 660, 670, 467 A.2d 483, 488 (1983). *See also Pittsburgh Corning Corp. v. James,* 353 Md. 657, 661, 728 A.2d 210, 211 (1999).

■ We recently reiterated:

"An order must satisfy the four requirements set forth below in order to be appealable under this exception to the ordinary operation of the final judgment requirement:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment."

*Osborn v. Bunge,* 338 Md. 396, 403, 658 A.2d 1102, 1105 (1995); *Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995); *Harris,* 310 Md. at 316, 529 A.2d at 359; *see also Pittsburgh Corning,* 353 Md. at 661, 728 A.2d at 211. "To fit within the collateral order doctrine, an appellant must convince the Court that a case satisfies all [of the] elements of the … test." *Sigma,* 297 Md. at 670, 467 A.2d at 488. It follows, therefore, that whether or not an interlocutory appeal satisfies the doctrine's requirements, so that the appeal will be heard, must be determined upon an individualized examination of the facts and circumstances of each case.

## B. Collateral order doctrine and this case

In the case *sub judice,* the appeal does not satisfy the collateral order doctrine's requirements. The four elements of the test are conjunctive in nature and in order for a prejudgment order to be appealable and to fall within this exception to the ordinary operation of the final judgment requirement, each of the four elements must be met.

■ The Circuit Court's denial of petitioner's motion is not immediately appealable under this doctrine, as it does not

**328**

satisfy at least one of the elements, element four of the test, which requires it to be effectively unreviewable on appeal from a final judgment. It is completely reviewable on appeal. The Legislature has so provided. Additionally, one of the considerations in a juvenile waiver proceeding, is the nature of the alleged offense. The nature of the offense relates to the merits of a case. Thus, it may not, although we do not decide it here, be "completely" separate from the merits. Again, the conjunctive nature of the elements instructs that if one element is lacking, (and here the final element, and perhaps another, is absent), the collateral order doctrine is not applicable. We also note that were we to hold that waiver orders are immediately appealable under the collateral order doctrine (or otherwise) numerous (perhaps enumerable) criminal proceedings would be stayed, while juvenile waivers are first litigated at the appellate level.[17] Appellate courts might well become, in practice, albeit perhaps indirectly, the waiver courts. Petitioner, is now a defendant in the criminal justice system and must proceed under that jurisdiction and then seek review after the criminal court's final judgment has been made.

We hold that the criminal court's order denying petitioner's Motion to Dismiss for Lack of Jurisdiction is not an immediately appealable order. A challenge to its correctness must await the conclusion of the criminal proceedings, just as would a direct challenge to the waiver order.

## Part II

### A. Juvenile jurisdiction

For purposes of guidance, we shall discuss the relationships between the lower courts in cases commencing as juvenile cases. Maryland has a separate judicial process, procedures,

---

17. In many instances it might well constitute incompetence for counsel at the juvenile court, to advise a client not to take an immediate appeal, as the client would remain in the juvenile court system for the appeal period. Considering the volume of juvenile cases, and presumably the volume of waivers, a practice of immediate appealability might well adversely affect both the systems of criminal justice and juvenile causes, as was suggested by the sponsors and proponents of Senate Bill 217.

punishments, and methods of treatment, for juveniles alleged to have committed otherwise criminal offenses. *In re Victor B.*, 336 Md. 85, 91–93, 646 A.2d 1012, 1014–16 (1994). We have reiterated that it was the General Assembly's intent to create a separate system for juveniles and emphasized the system's civil, not criminal, nature. Specifically, Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–804 of the Courts and Judicial Proceedings Article, establishes authority over certain children for the juvenile court.[18] *Franklin v. State*, 264 Md. 62, 63, 285 A.2d 616, 616 (1972),[19] reaffirms the notion of the juvenile court's exclusive authority over certain delinquent children. Section 3–804 gives "exclusive original jurisdiction" to the juvenile court over the delinquent child, the definition of which includes one who has committed an act, which would be a crime if done by a person who is not a child. *Id.* at 62–63, 285 A.2d at 616.

In cases where the juvenile court has exclusive original jurisdiction, the juvenile court has, under section 3–817,[20] the power to transfer authority over the juvenile matter to the circuit court sitting as a criminal court. *Franklin* at 69, 285 A.2d at 619; *Aye v. State*, 17 Md.App. 32, 33–34, 299 A.2d 513, 515–16 (1973). Section 3–817(e) lists the criteria the juvenile court shall consider when making its determination on waiver of juvenile jurisdiction.

The purpose of the juvenile waiver hearing is not to determine guilt or innocence, but rather to determine

---

18. Section 3–804, as it pertains to our case pursuant to 2001 Maryland Laws, Chapter 415 section 6 and effective as of March 2, 2002, is now codified in Maryland Code (1973, 1998 Repl.Vol., 2001 Supp.), section 3–8A–03 of the Courts and Judicial Proceedings Article.

19. *Franklin* discusses Maryland Code (1957, 1969 Cum.Supp.), Article 26 section 70–2, which has evolved to be the current section 3–804 of the Courts and Judicial Proceedings Article that is discussed throughout this opinion. *See supra* n. 13 discussing the new codification of section 3–804.

20. All references hereafter to section 3–817 are to Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–817 of the Courts and Judicial Proceedings Article. *See supra* n. 6 and n. 7.

whether or not the juvenile is a fit subject for juvenile rehabilitative measures. *See In re Appeal No. 646,* 35 Md. App. 94, 95, 369 A.2d 150, 152 (1977); *In re Bobby C.,* 48 Md.App. 249, 251, 426 A.2d 435, 437, *aff'd,* 292 Md. 114, 437 A.2d 660 (1981). The juvenile court, in those cases where it has exclusive initial jurisdiction, essentially determines which court will have authority over a juvenile for purposes of adjudicating any charges against the juvenile, either as to rehabilitative measures or as to punitive measures. . Section 3–817(f) details the procedure by which the juvenile court may waive its jurisdiction over a child and may order "the child held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult."

 Juvenile authority may properly be waived when the court determines, in light of the statutorily mandated factors that must be considered,[21] that the juvenile is ultimately "unfit . . . for juvenile rehabilitative measures." *Hazell v. State,* 12 Md.App. 144, 152, 277 A.2d 639, 644, *cert. denied,* 263 Md. 715 (1971). The final determination of waiver to the adult criminal system rests in the "court's sound discretion." *In re Murphy,* 15 Md.App. 434, 442, 291 A.2d 867, 871 (1972). Absent judicial abuse of discretion in determining waiver, waiver in a juvenile case is committed to the sound discretion of the juvenile judge. *In re Appeal No. 646,* 35 Md.App. 94, 96, 369 A.2d 150, 152 (1977).

## B. Effect of waiver order

Petitioner contends that the Juvenile Court having exclusive original jurisdiction over him under section 3–817 can not only grant a request for waiver of juvenile jurisdiction, but can also rescind an order of waiver of juvenile jurisdiction. In the case at bar, the State sought a waiver of juvenile jurisdiction for the charges brought against petitioner in three juvenile petitions. The Juvenile Court waived each of the petitions against

---

**21.** *See supra* n. 6 section 3–817(e).

petitioner and the State proceeded in the Circuit Court for Baltimore City, sitting as a criminal court, and charged petitioner, as an adult, with various criminal offenses.

If petitioner's contention is correct, his case would return to Juvenile Court and he would avert any criminal action against him. Further, if this interpretation of the law were accurate, every juvenile subjected to waived jurisdiction to the adult court, where criminal charges exist, would have the right to seek reconsideration of the waiver decision by a juvenile court, presumably at any stage of the criminal proceedings in the circuit court, perhaps even as late as sentencing in the criminal court.[22]

While this Court has not addressed the issue of juvenile courts rescinding waiver orders, the Court of Special Appeals has examined waiver determinations and has held "[T]hat ... an order of waiver valid on its face, ... terminates the jurisdiction of the juvenile court and vests jurisdiction in the court having jurisdiction over the criminal offense with which the child is charged." *In re Appeal No. 961*, 23 Md.App. 9, 12, 325 A.2d 112, 114 (1974). "As we have pointed out, it is the waiver order which divests the juvenile court of jurisdiction and bestows it on the criminal court. Thus, the propriety of the waiver order is subject to review on the appeal from the final judgment in the criminal trial of the

---

22. If the juvenile court's powers over juveniles in cases where jurisdiction has been waived to the criminal court continues past the time of charging in the circuit court, the same logic would dictate that the juvenile court's powers would continue as long as the subject was involved in the judicial process. This could lead to juvenile judges tracking the progress of waived cases through the criminal court and snatching the cases from the criminal court if the juvenile court disagrees with the actions of the prosecutor, defense counsel, or criminal court judge. While this is unlikely to happen, it could. Under petitioner's theory, could a criminal defendant, even during the period between conviction and sentencing in the criminal court, ask the juvenile court judge to reconsider his or her waiver decision, and thereby thwart the ability of the criminal court to impose sentence? A system whereby the juvenile court transfers authority to the criminal court, but, nevertheless retains authority via the reconsideration process, in our view, would be largely unworkable in practice.

substantive offense." *Id.* at 12–13, 325 A.2d at 115. In the case *sub judice,* the Juvenile Court granted a petition to transfer the case to the criminal court pursuant to section 3–817, transferring authority to the criminal court. At that point, the Juvenile Court no longer had any authority over the case.

We have found no foreign cases exactly on point. We have found cases that use language generally supportive of the position we announce in the case *sub judice. See In re Ivan T.,* 76 Cal.App.4th 624, 630, 90 Cal.Rptr.2d 588, 591 (1999) (discussing the ability of juvenile courts to properly "terminate" jurisdiction, even though in this case the Juvenile Court's retention of jurisdiction was found to be proper); *In the Interest of J.D.,* 195 Ga.App. 801, 801, 395 S.E.2d 280, 281 (1990) (discussing the transfer from juvenile to superior court, but including language stating how the juvenile court had exclusive jurisdiction "unless and until" the case was properly transferred to the superior court); *In Re A.M.,* 139 Ohio App.3d 303, 306–08, 743 N.E.2d 937, 939–40 (2000) (noting how the juvenile court retains jurisdiction unless the juvenile court "relinquishes" or transfers the matter and "abates the jurisdiction of the juvenile court."); *Vasquez v. State,* 739 S.W.2d 37, 42 (Tex.Crim.App.1987) (relating how the juvenile court has jurisdiction over a juvenile until it properly certifies its action and waives its jurisdiction).

 The doctrine of reverse waiver, *a concept inapplicable in the present case,* provides a situation where the *criminal court can* waive its *original* authority over a minor person to the juvenile court. The criminal courts exercising authority may transfer the case to the juvenile court pursuant to the circuit court waiver provisions set out in Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27 section 594A,[23] and, in effect create a "reverse waiver." Section 594A, howev-

---

**23.** Article 27 section 594 A provides:

"(a) *'Victim' defined.*—In this section, 'victim' has the meaning stated in § 770 of this article.

(b) *Transfer to juvenile court.*—In any case, except as provided in subsection (b), involving a child who has reached 14 years of age but

er, is irrelevant when the criminal court itself acquires its authority by waiver.[24] Further, if a case comes to the criminal court only by waiver and not by way of its original authority, the criminal court cannot grant a waiver back to the juvenile court.

In *Austin v. Director of Patuxent Institution,* 245 Md. 206, 209, 225 A.2d 466, 468 (1967), we stated, quoting from *Scherr v. Braun,* 211 Md. 553, 563, 128 A.2d 388, 392 (1957), that "[n]o principle is better established than that in exercising a statutory power, a court is without jurisdiction unless it complies with the statute." We went on to hold:

> "[I]t is apparent that the court, in the exercise of the special jurisdiction conferred on it by statute, was required to follow the only course of action prescribed by the statute when, as here, the defendant was found *not* to be a defective delinquent. If new trials are to be granted in defective delinquent proceedings, the Legislature, not the Courts, should provide for them."

*Austin,* 245 Md. at 212, 225 A.2d at 469 (citation omitted).

■■■ In *Crosby v. State,* 71 Md.App. 56, 63–64, 523 A.2d 1042, 1045 (1987), the Court of Special Appeals, applying our *Austin* standard to juvenile waiver proceedings, stated:

has not reached 18 years of age at the time of any alleged offense excluded under the provisions of § 3–804(e)(1) or (4) of the Courts and Judicial Proceedings Article, the court exercising jurisdiction may transfer the case to the juvenile court if a waiver is believed to be in the interests of the child or society.

 (c) *Non-transferable cases.*—The court may not transfer a case to the juvenile court under subsection (a) if:

 (1) The child has previously been waived to juvenile court and adjudicated delinquent;

 (2) The child was convicted in another unrelated case excluded from the jurisdiction of the juvenile court under § 3–804(e)(1) or (4) of the Courts and Judicial Proceedings Article or

 (3) The alleged offense is murder in the first degree and the accused child is 16 or 17 at the time the alleged offense was committed."

**24.** Article 27 section 594A as discussed *supra* was repealed by 2001 Maryland Laws Chapter 10 section 1, effective October 1, 2001. The substance of former Article 27 section 594A is now found in the present provisions concerning the transfer of criminal cases to juvenile court in Maryland Code (2001), section 4–202 of the Criminal Procedure Article.

"In *Austin v. Director of Patuxent Institution,* 245 Md. 206, 209, 225 A.2d 466 (1967), the Court of Appeals held that when a court proceeds by way of a special statute rather than under its general common-law authority, that court has only the powers given to it under the special statute. Accordingly, when a circuit court acquires a matter pursuant to § 3–817(a), that court can only exercise those powers given to it under that Code provision."

Petitioner is asking our Court to grant to the Juvenile Court the power to waive "jurisdiction" back to that court by way of its modification of its original waiver order. The waiver statute contains no provision permitting the Juvenile Court to rescind its waiver order once authority is vested in the criminal court.

In view of the fact that an order waiving a juvenile to the criminal courts transfers authority to that court, thereby divesting authority in the juvenile court, the provisions of Maryland Rule 11–116, Modification or Vacation of Order does not apply where authority has been transferred; it applies only to the modification or vacation of orders during the period while the juvenile court retains power. When the authority of the juvenile court is waived, there generally is not an order remaining that can be modified in the juvenile court, because there is no power or authority remaining that can be exercised by that juvenile court. When a juvenile court has the power to transfer a case to the circuit court and exercises that authority, the power to try the case is transferred. A juvenile court does not have the power to then divest the other court of its authority. A motion filed in the juvenile court for it to reconsider its waiver decision is unique. It is not just a motion for the juvenile court to reconsider its action; it is a request for the juvenile court to pass an order divesting a criminal court of its power and authority to try the case. That, the juvenile court has no power to do. The issue of the appeal of the waiver, based on its correctness, now interlocutory in nature, is moreover a matter for review on appeal after the final judgment in the criminal court.

In the case at bar, the Juvenile Court originally had "jurisdiction," and only after a waiver hearing did the Juvenile Court decide that the criminal court was the proper place to continue the action against petitioner. In conclusion, jurisdiction in this case (the authority to try it) was originally in the Juvenile Court; it was transferred to the Circuit Court and it remains there. Under the circumstances of the case *sub judice*, the Juvenile Court cannot rescind its past juvenile jurisdiction waiver order.

### III. Conclusion

The Circuit Court's denial of petitioner's Motion to Dismiss for Lack of Jurisdiction is not immediately appealable, because the waiver order itself was interlocutory in nature and an immediate appeal cannot be taken under the collateral order doctrine from the denial of the motion to dismiss the criminal charges.[25] Although we have discussed the issue for purposes of guidance, we nonetheless determine that petitioner's issue as to the appropriateness of the waiver is not yet reviewable on appeal. We perceive this to be consistent with legislative intent that challenges to waivers await the final disposition of matters in the criminal courts.

**APPEAL DISMISSED; COSTS TO BE PAID BY PETITIONER.**

---

25. There may be instances where a juvenile court's order waiving a matter to the criminal court, or a criminal court's failure to waive, might be appealable under the collateral order doctrine. For example, a juvenile court's waiver of a matter, where the age of the child is mistakenly given and is relevant, might be, in a given circumstance, outside that court's power and authority and the case would be outside the power of the criminal court to try. In such a case, where no discretion at all is involved and where a court lacks the power to legally try the case in the first instance and the child has the right not to be tried under any circumstances in the criminal court, the doctrine *might* apply. One supposes such instances would be rare. This case, obviously, is not one.