892 A.2d 593

**ANNE ARUNDEL COUNTY, Maryland**

v.

**CAMBRIDGE COMMONS, et al.**

**No. 2483, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 22, 2005.

Reconsideration Denied March 15, 2006.

220

Kurt J. Fischer (Marta D. Harting, Melissa L. Mackiewicz, on brief, Baltimore, Linda M. Schuett, Cty. Atty., Andrew Murray, Sr. Asst. Cty. Atty., on brief), for appellant.

John R. Greiber, Jr. (Phillip F. Scheibe, on brief), Millersville, for appellee.

Panel MURPHY, C.J., KRAUSER and THEODORE G. BLOOM, (Ret., Specially assigned) JJ.

BLOOM, J.

Anne Arundel County seeks our review of an Order of the Circuit Court for Anne Arundel County filed on 30 December 2004 in this class action brought against the County by Cambridge Commons, L.P., and others. We shall affirm the Order appealed from for the reasons set forth below.

The background of this case has been set forth by this Court's unpublished opinion in a prior appeal that reversed the circuit court's dismissal of the developer's first amended

complaint. *Cambridge Commons et al. v. Anne Arundel County, Maryland,* No. 1340, Sept. Term. 2001 (filed Aug. 21, 2002). Consequently, we need only recite a brief summary to place this appeal in its proper context.

Appellees, certain owners and developers of property in Anne Arundel County, filed their initial complaint in this action on 22 February 2001, and subsequently filed an amended complaint on 2 May 2001. They seek equitable relief that includes an order of refund of developmental impact fees that had been paid to the County but, allegedly, have not been spent. This case was certified as a class action on 26 February 2003. In the provisions of the Order under review that pertain to class notice, the circuit court, acting "pursuant to [Maryland] Rule[s] 2–231 and 2–504," directed, *inter alia:*

a) that both parties within 30 days shall prepare a proposed form of notice in compliance with Rule 2–231(e) as to a 2–231(b)(3) class, which may be issued at the County's expense and which, at a minimum, must comply substantially with AACC [Anne Arundel County Code], section 7–110[1]
. . .

b) that the County also within 30 days must provide . . . a list of all prospective class members—that is, current owners of properties for which impact fees were paid in the years and impact fee districts contested herein[.]

Maryland Rule 2–504 pertains to scheduling orders. With respect to the class notice, the Order appealed from requires that the notice comply with Maryland Rule 2–231(e) "as to a Rule 2–231(b)(3) class[.]" Maryland Rule 2–231, which governs class actions, relevantly provides:

---

1. Anne Arundel County Code (1985), Art. 24, § 7–110. Article 24 of the 1985 Code governs planning and development. Section 7–110 pertains to the refund of unexpended and unencumbered fees. Section 7–110(b) provides for notice via publication in "one or more newspapers that have a general circulation in the County" of the availability of refunds of unexpended or unencumbered impact fees and of the manner in applying for a refund. The Code has been extensively revised in 2005. The refund provisions now reside in Section 17–11–210. The terms of the refund provisions are virtually identical, and the Code revision does not affect this case.

**Rule 2–231. Class Actions.**

(a) **Prerequisites to a class action.**—One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class actions maintainable.**—Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

\* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

\* \* \*

(e) Notice.—In any class action, the court may require notice pursuant to subsection (f)(2). In a class action maintained under subsection (b)(3), notice shall be given to members of the class in the manner the court directs. The notice shall advise that (1) the court will exclude from the class any member who so requests by a specified date, (2) the judgment, whether favorable or not, will include all

members who do not request exclusion, and (3) any member who does not request exclusion and who desires to enter an appearance through counsel may do so.

Notice is required for a class that is certified pursuant to Rule 2–231(b)(3).

The Maryland class action rule is derived from Fed.R.Civ.P. 23(c)(2) as amended in 1966. That Rule provided, with respect to class notice:

> (2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

The 1966 Amendments to the federal Rule

> were designed, in part, specifically to ... assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 547, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (footnote omitted). Because individuals are included in the class, and must then opt out, Fed.R.Civ.P. 23(c)(2) indicates that class members are to be notified early enough to allow voluntary exclusion prior to a judgment in the suit and early enough to allow for effective appearance of counsel. *See Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir.1975).

## I.

■ Although the County's appeal raises a host of issues, the single question that is appropriately dispositive is: "Did the circuit court's order with respect to class notice constitute

an abuse of discretion." Prior to addressing that issue, however, we must determine whether we have jurisdiction to entertain the County's appeal in the first place.[2]

■ "The general rule as to appeals is that, subject to a few, limited exceptions, a party may appeal only from a final judgment." *Nnoli v. Nnoli,* 389 Md. 315, 323, 884 A.2d 1215, (2005) (citations omitted). *See Boyd v. Bell Atlantic—Maryland,* 390 Md. 60, 81, 887 A.2d 637 (2005). "Two reasons exist for the rule, that until a final judgment is entered the proceedings are subject to revision by the trial court and in the interest of sound judicial administration to avoid piecemeal appeals." *Lewis v. Lewis,* 290 Md. 175, 180, 428 A.2d 454 (1981).

The final judgment rule is subject to three exceptions, as Judge Wilner noted for the Court of Appeals:

> [T]here are only three exceptions to that rule: appeals from interlocutory orders specifically allowed by statute, predominantly those kinds of orders enumerated in Maryland Code, § 12–303 of the Cts. & Jud. Proc. Article; immediate appeals permitted under Maryland Rule 2–602(b); and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

*Board of Education v. Bradford,* 387 Md. 353, 382–83, 875 A.2d 703 (2005) (citing *Smith v. Lead Industries Assoc., Inc.,* 386 Md. 12, 21, 871 A.2d 545 (2005); *Frase v. Barnhart,* 379 Md. 100, 109–10, 840 A.2d 114 (2003); *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549 (1999)). *See Salvagno v. Frew,* 388 Md. 605, 615, 881 A.2d 660 (2005).

### Jurisdiction over an Interlocutory Order

■ Section 12–303 of the Courts Article relevantly provides:

---

**2.** The County points out that appellees did not renew their motion to dismiss or to limit issues. If jurisdiction is lacking, an appellate court will dismiss an appeal *sua sponte. Rustic Ridge, L.L.C. v. Washington Homes, Inc.,* 149 Md.App. 89, 92 n. 1, 814 A.2d 116 (2002).

### § 12–303. Appeals from certain interlocutory orders.

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

* * *

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause; ...

Maryland Code (1974, 2002 Repl.Vol.), § 12–303 of the Courts and Judicial Proceedings Article.

■ That provision is a counterpart to 28 U.S.C. § 1292(a). *Funger v. Mayor & Council of Town of Somerset*, 244 Md. 141, 150, 223 A.2d 168 (1966). *See Boyd, supra*, slip op. at 31 (28 U.S.C. § 1292(a)(1) Federal analog to CJ § 12–303(3)(i)). Interpretations of the federal provision may be relevant to an analysis of Section 12–303. *Id. Cf. Stewart v. State*, 282 Md. 557, 571, 386 A.2d 1206 (1978) (no substantive difference between 28 U.S.C. § 1291 and CJ 12–301). The United States Court of Appeals for the District of Columbia Circuit observed, with respect to Section 1292(a):

As the Supreme Court stated in *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996–97, 67 L.Ed.2d 59 (1981), § 1292(a)(1) provides jurisdiction over not just an injunction so-denominated, but over any order having the "practical effect" of an injunction if the order threatens a "serious, perhaps irreparable, consequence" and is of such a nature that it can be "effectively challenged only by immediate appeal."

*Cobell v. Norton*, 334 F.3d 1128, 1137 (D.C.Cir.2003).

The court further stated that an

order directing the parties to prepare a class notice and direct the possible allotment of costs thereof to be [was] merely "[a]n order by [a court] that relates only to the conduct or progress of litigation before that court [which] ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)."

*Id.* (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 279, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)).

That view was anticipated by Judge Digges, who recited the following pertinent language from an Illinois case:

> Finally, petitioner argues that this order is appealable as the denial of an injunction under Md.Code (1974, 1978 Cum.Supp.), § 12–303(c)(1) of the Courts Article. *See Meehan v. Hopps,* 45 Cal.2d 213, 288 P.2d 267, 269 (1955). In answering this contention, we think it only necessary to quote the analysis of the Supreme Court of Illinois when it was presented with the issue of whether an order disqualifying counsel was immediately appealable:
>
> > To bring their case within the [Illinois interlocutory appeal] statute, defendants contend the order ... possessed the elements of restraint and the enjoining of action which, it is said, makes it of the same character as an interlocutory order for injunction. The purpose of an interlocutory injunction is to preserve the rights of some one or more of the parties and continue the property and the rights therein *in statu quo* until the cause can be disposed of on the merits. The order [disqualifying the attorney] has no bearing on the merits of the litigation ... [and] was not of the character intended by the legislature to be covered by ... the [interlocutory appeal] statute.

*Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.,* 284 Md. 86, 98–99, 394 A.2d 801 (1978) (footnote omitted) (quoting *Almon v. American Carloading Corporation,* 380 Ill. 524, 528–29, 44 N.E.2d 592 (1942)).

We believe that the Order under review is not the equivalent of an injunction so as to fall within the purview of CJ § 12–303. *See Cant v. Bartlett,* 292 Md. 611, 615, 440 A.2d 388 (1982) (generally only interlocutory orders specified in § CJ 12–303 are immediately appealable).

228

 Nevertheless, we conclude that the Order constitutes a "final" order for purposes of CJ 12–301, which embodies the final judgment rule, because it falls within the common law collateral order exception to the final judgment rule. That exception was explained by Judge Digges:

> This [collateral order] doctrine, recently applied in the criminal context by this Court in *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206, 1213 (1978) . . . was first articulated by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in dealing with the appealability of an order denying a motion for the posting of security for costs under the federal appeals statute that is similar to section 12–301. The concept is narrow in scope, however, for, as the Supreme Court has articulated, if the order is to come within the "small class" of cases included in the final judgment rule under *Cohen* it must meet four requirements: "[T]he order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue[, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted); *see Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. 1221, 93 L.Ed. 1528.

*Peat & Co. v. Los Angeles Rams,* 284 Md. at 91–92, 394 A.2d 801. *See Pittsburgh Corning Corp. v. James,* 353 Md. 657, 661, 728 A.2d 210 (1999); *Parrott v. State,* 301 Md. 411, 418–20, 483 A.2d 68 (1984) (collecting cases). *See, also, Johnson v. Jones,* 515 U.S. 304, 310–11, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Swint v. Chambers County Commission,* 514 U.S. 35, 41–42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). The "common law collateral order" doctrine provides for appellate review of a "narrow class of interlocutory orders [that are] treated as final judgments without regard to the posture of the case." *In re Franklin P.,* 366 Md. 306, 326, 783 A.2d 673 (2001).

In *Jolley v. State,* 282 Md. 353, 384 A.2d 91 (1978), the defendant appealed an order finding him incompetent to stand trial. The State challenged the Court's jurisdiction because, it asserted, the competency order was not final. The Court of Appeals disagreed. Judge Orth, writing for the Court, articulated the well established prudential concerns of the final judgment rule, but concluded that the order complained of, like the order in *Cohen,*

> [was] a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it; it does not make any step toward final disposition of the merits of the case and will not be merged in the final judgment.

*Jolley,* 282 Md. at 357, 384 A.2d 91.

The class action plaintiffs in *In re Nissan Motor Corporation Antitrust Litigation,* 552 F.2d 1088 (5th Cir.1977) appealed from two interlocutory orders in their suit against certain automobile dealers and manufacturers. One order directed a defendant to "prepare and submit at its own expense a computer printout of the names and addresses of current, registered [vehicle] owners and that direct[ed] plaintiffs at their expense to mail an initial class action notice[.]" *Id.* at 1092–93.

In ruling that the class notice order was properly before it, the Fifth Circuit concluded that the order was " 'separable from, and collateral to,' the substantive claims at the marrow of this action." *Id.* at 1095 (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The order before the *Nissan Motor*'s court was deemed not to be "tentative, informal or incomplete," [3] and its entry followed the district court's conclusive rejection of the

---

3. We note that the circuit court in the case *sub judice* indicated in paragraph 4(a) that the proposed form of notice "may" be issued at County expense. We do not read this language to conclude that the Order is tentative. Paragraphs 4(a) and (b) direct the preparation of the form of notice, and order the County to provide a list of all prospective class members. These mandates are not "tentative, informal or incomplete."

plaintiffs' arguments on the merits of the order. The court added that " 'an immediate appeal does not substantially threaten the interests of the judicial system in avoiding piecemeal appeals.' " *Nissan Motor,* 552 F.2d at 1095 (quoting *Litton Systems, Inc. v. Southwestern Bell Telephone Co.,* 539 F.2d 418, 426 (5th Cir.1976)).

The Fifth Circuit added a variety of other considerations that supported its exercise of jurisdiction, including the concern that the class notice order might effect irreparable harm and that it presented " 'serious and unsettled question[s]' of law ... as to which party should bear the tasks and costs." *Nissan Motor,* 552 F.2d at 1095. Finally, the court considered review to be "manifestly appropriate" when "viewed with a 'practical, rather than narrowly technical' focus." *Id.* (citing *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (quoting in part *Cohen,* 337 U.S. at 545, 69 S.Ct. 1221)). *See Circuit City Stores, Inc. v. Rockville Pike,* 376 Md. 331, 347, 829 A.2d 976 (2003).

■ We recognize that an "interlocutory order from which no appeal lies is merged into the final judgment and open to review on appeal from that judgment." *Hellerstein v. Mr. Steak, Inc.,* 531 F.2d 470, 474 (10th Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). But the class notice order is separate and distinct from the merits. Further, the mechanics and expense of providing notice implicate costs and effort that will affect the litigation. Unlike an error in discovery, or a "managerial order," *see EEOC v. Mitsubishi Motor Manufacturing of America, Inc.,* 102 F.3d 869, 871 (7th Cir.1996), the allocation of responsibilities and duties that are summoned by the Order *sub judice* is a matter that requires the intervention of an appeal.

We respectfully disagree with cases such as *Lusardi v. Xerox Corporation,* 747 F.2d 174, 178 (3d Cir.1984), in which the court was confronted with an order compelling the defendant "to provide a mailing list and authorizing plaintiffs to send notice." The court dismissed an appeal from the order, explaining, with regard to the notice portion thereof, that

"[t]he requirement that Xerox provide a mailing list is essentially a discovery device." *Lusardi,* 747 F.2d at 178. The court distinguished *Eisen* by the fact that, unlike the defendants in *Eisen,* the employer before it, Xerox, "ma[de] no claim that production of the mailing list was burdensome." *Id.* The court added that, in any event, "Xerox' real complaint was with the notice that potential class members received." *Id.*

We are not persuaded that a class notice order like the one in this case is "essentially a discovery device." In any event, the County has effectively complained that the notice provisions of the Order are burdensome.

We conclude that the circuit court's Order is an appealable collateral order, and thus concur that the analysis set forth by the Supreme Court in *Eisen* applies with equal force to the appeal *sub judice* and merits quotation at length:

> Analysis of the instant case reveals that the District Court's order imposing 90% of the notice costs on respondents likewise falls within "that small class." It conclusively rejected respondents' contention that they could not lawfully be required to bear the expense of notice to the members of petitioner's proposed class. Moreover, it involved a collateral matter unrelated to the merits of petitioner's claims. Like the order in *Cohen,* the District Court's judgment on the allocation of notice costs was "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it," *id.,* at 546–547, 69 S.Ct. 1221, and it was similarly appealable as a "final decision" under 1291. In our view the Court of Appeals therefore had jurisdiction to review fully the District Court's resolution of the class action notice problems in this case, for that court's allocation of 90% of the notice costs to respondents was but one aspect of its effort to construe the requirements of Rule 23(c)(2) in a way that would permit petitioner's suit to proceed as a class action.

*Eisen,* 417 U.S. at 172, 94 S.Ct. 2140.

Accordingly, we conclude that we have jurisdiction to entertain a challenge to the circuit court's class notice Order. The

Order (1) conclusively determines the disputed question of which party shall be responsible for providing a list of purported class members, bearing that cost, and conclusively mandates the preparation of the form; (2) resolves important issues pertaining to class notice; (3) is completely separate from the merits of the action with respect to the refund of allegedly improperly unencumbered or unexpended developmental impact fees; and (4) would be effectively unreviewable on appeal from a final judgment with respect to the merits of the class action. *See generally, Southern Ute Indian Tribe v. Amoco Production Co.*, 2 F.3d 1023, 1027–28 (10th Cir.1993); *In re School Asbestos Litigation*, 842 F.2d 671, 677–79 (3d Cir.1988); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 352 (7th Cir.1975). *See also Boyd, supra,* slip op. at 24 (discussing "attributes" of final orders).

## II.

### *Standard of Review*

Our review of the circuit court's Order is limited to a determination of whether it constitutes an abuse of discretion. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356–57, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (district court properly may exercise discretion to order defendant to perform task of notifying class members).[4]

### *Discussion*

 The County poses a variety of questions, but we need concern ourselves only with the final two assertions: that the circuit court erred (1) by ordering the County to bear the expense of providing class notice and (2) by ordering the County to compile the list of class members at its own expense. Those arguments may be addressed as one.

---

4. *Cf. Molski v. Gleich*, 318 F.3d 937, 951 (9th Cir.2003) (de novo review of district court's rulings regarding notice). Certainly, we would exercise plenary review over decisions respecting the adequacy of class notice, or whether notice should issue in the first instance.

The County insists that "the plaintiff in a class action *must* bear all the cost of issuing notice to the class." We acknowledge the general rule that the cost and resultant task of effecting class notification devolve on the plaintiff. Yet that principle is not absolute, for, as the Supreme Court noted in *Sanders:*

The general rule must be that the representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class action and to represent other members of his class. In *Eisen IV* we noted the general principle that a party must bear the "burden of financing his own suit," 417 U.S., at 179, 94 S.Ct. 2140. Thus ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant.

In some instances, however, the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff. In such cases, we think that the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question. As the *Nissan [In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d at 1102 (1977) ] court recognized, in identifying the instances in which such an order may be appropriate, a rough analogy might usefully be drawn to practice under Rule 33(c) of the discovery rules. Under that Rule, when one party directs an interrogatory to another party which can be answered by examination of the responding party's business records, "it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to" examine and copy the records, if the burden of deriving the answer would be "substantially the same" for either party.... But where the burden of deriving the answer would not be "substantially the same," and the task could be performed more efficiently by the responding party, the discovery rules normally require the responding party to derive the answer itself.

*Oppenheimer Fund, Inc.,* 437 U.S. at 356–57, 98 S.Ct. 2380 (footnotes omitted). *See, e.g., Hypertouch, Inc. v. Superior*

*Court,* 128 Cal.App.4th 1527, 1551–52, 27 Cal.Rptr.3d 839, 855–56 (2005) (footnotes omitted), in which the court said:

Ordinarily it is the plaintiff's responsibility to provide notice and bear the expense of doing so (see *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732), but there are circumstances in which courts have required the defendant to assist in identifying class members and/or to bear or share the expense of providing them notice. (*Oppenheimer Fund v. Sanders* (1978) 437 U.S. 340, 355, 98 S.Ct. 2380, 57 L.Ed.2d 253; *State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421, 78 Cal.Rptr.2d 88; *see also In re Nissan Motor Corp. Antitrust Litigation* (5th Cir.1977) 552 F.2d 1088, 1101–1102 [collecting cases in which defendants were ordered to help identify members of the plaintiff class]; *Macarz v. Transworld Sys., Inc.* (D.Conn. 2001) 201 F.R.D. 54; *Six Mexican Workers v. Arizona Citrus Growers* (D.Ariz.1986) 641 F.Supp. 259 [imposing on defendants the cost of class notice].)

In *State of California ex rel. Dept. of Motor Vehicles v. Superior Court, supra,* 66 Cal.App.4th 421, 78 Cal.Rptr.2d 88, the defendant was required to share in the cost of identifying and notifying the class because the difficulty of identifying class members was the result of its conduct. . . . In part for that reason, the Court of Appeal declared that fairness might require the DMV to bear a part of the cost of class notification.

Continuing its discussion of this issue, the court added, at 128 Cal.App.4th at 1552–54, 27 Cal.Rptr.3d at 856–57:

The approach adopted in *State of California ex rel. Dept. of Motor Vehicles v. Superior Court,* is hardly novel. For example, in *Appleton Elec. Co. v. Advance–United Expressways* (7th Cir.1974) 494 F.2d 126, responsibility to notify the class was imposed on the defendants because they failed to retain information that would have made it easy to identify the class. The defendant carriers in that case had been ordered by the Interstate Commerce Commission (ICC) to refund shipping charges not found to have been just and

reasonable. After the case was certified as a class action and plaintiffs granted summary judgment on the issue of liability, the court ordered that notice be sent to members of the class by first-class mail. The court determined that each defendant possessed or controlled records identifying those shippers who paid the rates disapproved by the ICC, and directed the defendants to file with the court "the names and most complete last-known addresses" of such shippers. Rejecting the defendants' objection that this was not feasible, the Seventh Circuit pointed out that "[t]he difficulties defendants complain of are of their own making. They knew at the beginning of the rate-increase period that they might have to refund the increase. Yet they apparently set aside no funds, took no steps to keep adequate records for easy identification of their refund customers, and did no earmarking of the necessary documents. Some have even destroyed their records. Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify." (*Id.* at 135.) The court observed that "if the costs are higher than they might have been if defendants had kept better records, that is even more clearly defendants' burden to bear." (*Id.* at 136–137.) "Class actions cannot be defeated by destroying records." (*Id.* at 139.)

\* \* \*

The record suggests that defendant's conduct may have unnecessarily complicated the problems of identifying and notifying the class . . . and that in any case, defendant may possess the ability to provide class notice easily and at relatively little cost (as in *Mountain States v. District Court, supra,* 778 P.2d 667). Either factor would justify shifting the responsibility to notify the class to defendant.

That rationale applies with equal force to appellant's arguments. Under the circumstances of this case, we do not perceive an abuse of the circuit court's discretion in allocating to the County the burden of providing a class notice list and shouldering the cost of providing notice. If the County has

properly made and maintained appropriate records of developmental impact fees it collected and its expenditures from such fees, the burden placed upon it by the circuit court's Order should not be too onerous. If, however, it has failed to make and keep such records, the difficulties and expenses of reproducing them should be borne by it rather than by appellants or members of the class. In that regard, the decision by the United States Court of Appeals for the Seventh Circuit in *Appleton Elec. Company v. Advance–United Expressways,* 494 F.2d 126 (7th Cir.1974) is instructive. In that case, the court of appeals upheld an order of the United States District Court for the Northern District of Illinois that certified a class action against motor carriers to recover excessive charges and imposed on the carriers the obligation to identify and notify the members of the class. The court noted that each defendant was required to maintain or control records identifying those shippers who paid the excessive rates, *i.e.,* rates disapproved by the Interstate Commerce Commission, and it directed the defendants to file with the court "the names and most complete last-known addresses" of such shippers. Rejecting the defendants' objection that compliance with that order was not feasible—apparently some of the carriers had not kept such records or had destroyed them—the court noted:

> There appears to be no justification for the unavailability of records. A maxim in the law of evidence is *omnia praesumuntur contra spoliatorem* (all things are presumed against a despoiler).

*Appleton Elec. Company,* 494 F.2d at 139 n. 24. It then continued:

> The time has come for the carriers to stop spending money to defeat these rightful refunds and to begin spending money to accomplish them. Manageability will be greatly assisted once the carriers' attitude is one of cooperation rather than opposition.

*Id.*

As a final note, we consider jurisdiction in this matter with respect to these discrete issues to be a close call. We have no

hesitation, however, in concluding that the slender thread of jurisdiction in this case will not bear the weight of the County's attempt to broaden the scope of this appeal to include other issues. We shall not indulge the County's attempt to place those additional issues before us.

**ORDER OF 30 DECEMBER 2004 AFFIRMED; COSTS TO BE PAID BY APPELLANT.**