982 A.2d 1175

**FORD MOTOR Credit COMPANY,**

v.

**Nicole FERRELL, et al.**

**No. 1336, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Nov. 2, 2009.

706

Thomas G. Parachini (P. Rivka Schochet, Miller, Canfield, Paddock and Stone, PLC, Detroit, MI, Steven C. Kahn, Rockville, on brief), for Appellant.

Richard S. Gordon (Quinn, Gordon & Wolf, Chtd., Towson, Mark H. Steinbach, O'Toole, Rothwell, Nassau & Steinback, Washington, DC, on brief), for Appellee.

Panel: DAVIS, HOLLANDER and WRIGHT, JJ. .

WRIGHT, J.

John and Sarah Shumaker, appellees,[1] filed a class action complaint in the Circuit Court for Howard County against Ford Motor Credit Company ("FMC"), appellant, for alleged violations of the following statutes: 1) Maryland's Credit Grantor Closed End Provisions ("CLEC"), Md.Code (1975, 2005 Repl.Vol.), Commercial Law Article ("CL") § § 12–1001 *et seq.;* 2) Maryland's Consumer Protection Act ("CPA"), CL § § 13–101 *et seq.;* and 3) Maryland's Retail Installment Sales Act ("RISA"), CL §§ 12–601 *et seq.* The circuit court certified the action as a class action. Appellant then filed this appeal, presenting four issues[2] for our review, which we will summarize and combine for clarity as follows:

---

1. Nicole Ferrell and Chante Smith were also named plaintiffs in the complaint. The finance contracts in connection with their vehicles, however, were not assigned to Ford Motor Credit Company. Therefore, they are not parties to this appeal.

2. Appellant's questions are reproduced verbatim below:
 1) Under the common law collateral order exception, an order is subject to appeal prior to final entry of judgment when the order conclusively determines the disputed question, resolves an important issue, that is completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment. The trial court's July 17, 2008 Class Certification Order conclusively determined that Appellees' claims against Appellant shall now proceed as a class action, and resolved the important issue whether this litigation should be prepared for trial as a class action. This Order resolved a disputed question regarding class certification that is completely separate from the merits of the action, and required the parties to litigate this case as a class action. Because the claims alleged are not capable of class wide resolution, the parties and the court will suffer irreparable harm and waste that cannot be undone and, for all practical purposes, will make this Order effectively unreviewable on appeal from a final judgment. Should the Class Certification Order be reversed on appeal, and the Ford Credit Subclass decertified, under the collateral order exception?
 2) Should the Ford Credit Subclass be decertified where the only class representatives with contractual relationship with Ford Credit present unique, individual issues that are atypical and unrepresentative of absent class members and Ford Credit has unique defenses against these representatives' claims?

1) Whether the collateral order doctrine permits an interlocutory appeal from a class certification order in this case.

2) Whether the trial court abused its discretion in certifying the Ford Credit Subclass under Maryland Rule 2–231.

Appellees moved to dismiss the appeal for lack of jurisdiction and also filed a general response to the appeal.

We hold that the class action certification order in this case is not appealable under the collateral order doctrine and, accordingly, dismiss the appeal for lack of jurisdiction. We therefore do not reach the second issue presented and shall not address whether the trial court abused its discretion in certifying the Ford Credit Subclass.

## FACTUAL BACKGROUND

Appellees allege that Koons Dealerships of Marlow Heights, Maryland ("Koons") violated Maryland law by "concocting a scheme" to overcharge its customers for the costs of title, tags, and registration ("government fees") in connection with motor vehicle purchases. Appellees allege that Koons represented to its customers that they were charged the actual cost of government fees and that Koons collected the money only to pass it along to the Maryland Vehicle Administration ("MVA"). Appellees further allege that Koons intentionally inflated the government fees by approximately $25.00 to $55.00 per transaction, submitted to the MVA only the government fees actually due, and retained the balance. Appellees argue that FMC is likewise responsible for this "scheme" because it financed numerous sales that included these overcharges.

---

3) Should the Ford Credit Subclass be decertified where the identification of the subclass, as well as the resolution of the subclass claims alleged, poses the unmanageable task of individual mini-trials before a jury because of the multiplicity of individual issues present in each individual credit transaction?

4) Is decertification of the Ford Credit Subclass by this Court necessary to prevent prejudice, error or abuse of discretion that cannot be remedied on appeal after entry of judgment?

John and Sarah Shumaker traded in their 1999 Hyundai automobile and purchased a 2002 GMC Sonoma truck from Koons on February 7, 2002. Koons assigned the Shumakers' contract to FMC. Although Koons did obtain a duplicate title for the Hyundai, it is disputed whether Sarah Shumaker signed the application for the duplicate title and whether Koons disclosed the fee for the title. The fee for a duplicate title was $20.00 in 2002. Koons also issued a temporary registration plate for the GMC Sonoma. The fee for the registration plate was $15.00 in 2002. The parties agree that Koons charged $157.00 for government fees. Appellees allege that Koons only paid the MVA $132.50 and "pocketed" the difference. Appellant, however, argues that the duplicate title fee and temporary registration fee must be included in the cost of the government fees; therefore, the total due was $167.50 and the Shumakers were actually undercharged.

## PROCEDURAL BACKGROUND

On October 31, 2003, appellees filed a complaint and request for jury trial. An amended complaint was filed on January 15, 2004. Appellees filed a third amended complaint on August 10, 2005, seeking damages from appellant for alleged violations of the Maryland CLEC, CPA, and RISA, as described above. Appellant denied the allegations of the complaint, moved to dismiss all claims, and moved for summary judgment as to the Shumakers. On July 10, 2008, the circuit court denied the motion to dismiss and for summary judgment with respect to all claims applicable to appellant.[3]

Appellees filed a renewed motion for certification of the class on September 9, 2005. The court held a hearing on the motion, and the parties submitted extensive memoranda and exhibits. On July 10, 2008, the court issued a memorandum opinion and order granting appellees' motion for class certification under Maryland Rules 2–231(b)(2) and 2–231(b)(3). The court certified the following class and subclasses:

---

[3]. The court did dismiss count two of the third amended complaint: "Licensure (In-house Subclass Claims against Koons Dealerships)."

*"Overcharge Class"*

All Koons Customers who: (1) purchased or leased a new or used motor vehicle from Koons Dealerships and (2) as part of the transaction paid more to the Koons Dealerships for Governmental Charges than the amount which the dealerships paid to the government for those charges.

*"In House Subclass"*

The In–House Subclass consists of all Customers who financed all or part of their vehicle purchase from Koons Dealerships by a credit contract with Koons Dealerships, which the Koons Dealerships did not assign to a licensed third party lender.

*"Ford Credit Subclass"*

The Ford Credit Subclass consists of all Customers who: (1) are part of the Overcharge Class, and (2) financed all or part of their vehicle purchase price through a credit contract which Koons Dealerships assigned to Ford Credit.

The court also ordered the parties to "prepare for the Court's approval ... an Administrative Order setting forth the form and manner of providing notice to the class, consistent with this Order and pursuant to Md. Rule 2–231(c)." The docket entries reflect that appellees filed a motion for entry of administrative order and appellants filed an opposition to the motion. The circuit court has not ruled on the motion.

## DISCUSSION

### 1. Appellate review of non-final judgments

Ordinarily, a party may appeal only from a final judgment. *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989). The final judgment rule is paramount in avoiding disfavored piecemeal appeals. The application of the rule "results in a single review of all claims of error throughout an entire proceeding, thus both expediting and conserving judicial and other resources." *Philip Morris v. Angeletti,* 358 Md. 689, 713, 752 A.2d 200 (2000) (citations omitted).

A final judgment exists when "(1) the court intends for the judgment to constitute an unqualified final disposition of the matter; (2) the court adjudicates all of the claims of the parties; and (3) the clerk properly records the judgment in accordance with Maryland Rule 2–601." *Royal Fin. Servs., Inc. v. Eason,* 183 Md.App. 496, 499, 961 A.2d 1161 (2008) (citing *Rohrbeck, supra,* 318 Md. at 41, 566 A.2d 767). As this Court recently noted in *Royal Financial,* a final judgment does not exist when a circuit court certifies a class action because, in doing so, the circuit court "[does] not intend the order to constitute a final disposition of the matter and the court [does] not adjudicate any of the parties' liability or damages claims." *Id.*

Appellant correctly acknowledges that the class certification order is not a final judgment and that the appeal is interlocutory. Maryland law is clear that appellate jurisdiction over interlocutory orders is appropriate only in very limited circumstances. *Bd. of Educ. v. Bradford,* 387 Md. 353, 382–83, 875 A.2d 703 (2005). A party may appeal a non-final judgment: (1) from the specific orders enumerated in Md. Code (1973, 2006 Repl.Vol.), Courts & Judicial Proceedings Article ("CJP") § 12–303; (2) when the court acts pursuant to Maryland Rule 2–602(b) [4]; or (3) from orders that fall under the collateral order doctrine. *Id.* (footnote not in original). *See also Royal Financial, supra,* 183 Md.App. at 499, 961 A.2d 1161.

## 2. The Collateral Order Doctrine

Appellant argues that the collateral order doctrine applies to this case and, accordingly, vests this Court with jurisdiction. The collateral order doctrine is best character-

---

4. Maryland Rule 2–602(b) states:
 If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
 (1) as to one or more but fewer than all of the claims or parties; or
 (2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

ized as a limited exception to the final judgment rule. *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549 (1999). The Court of Appeals remarked that it is applied "gingerly"[5] to a "narrow" class of interlocutory orders in "extraordinary circumstances," where expeditious review is a "perceived necessity." *Hudson v. Housing Auth.,* 402 Md. 18, 25, 935 A.2d 395 (2007) (citations omitted). Maryland courts adopted requirements, originally articulated by the United States Supreme Court,[6] which a non-final order must satisfy to fall within the scope of the collateral order doctrine. *See, e.g., Shoemaker, supra,* 353 Md. at 165, 725 A.2d 549; *Anne Arundel County v. Cambridge Commons,* 167 Md.App. 219, 228, 892 A.2d 593 (2005). In *Royal Financial, supra,* 183 Md.App. at 499–500, 961 A.2d 1161, this Court restated those requirements as follows:

> The collateral order doctrine provides jurisdiction over non-final orders if the order (1) conclusively determines the

---

**5.** The Court of Appeals recently reiterated its reluctance to apply the collateral order doctrine in *Washington Suburban Sanitary Comm'n v. Bowen,* 410 Md. 287, 289, n. 1, 978 A.2d 678, 680, n. 1 (2009). The Court stated *id.:*

> [R]ecent cases in this Court rejecting attempted appeals under the collateral order doctrine include, *e.g., Hudson v. Housing Authority,* 402 Md. 18, 25–27, 935 A.2d 395, 399–400 (2007); *St. Mary's County v. Lacer,* 393 Md. 415, 427–431, 903 A.2d 378, 386–387 (2006); *St. Joseph v. Cardiac Surgery,* 392 Md. 75, 85–88, 896 A.2d 304, 310–311 (2006); *Nnoli v. Nnoli,* 389 Md. 315, 329–330, 884 A.2d 1215, 1223 (2005); *Dawkins v. Baltimore Police,* 376 Md. 53, 827 A.2d 115 (2003); *Theurer v. Farrell,* 376 Md. 65, 827 A.2d 122 (2003); *In re Foley,* 373 Md. 627, 633–636, 820 A.2d 587, 591–593, *cert. denied,* 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003); *Housing Authority v. Smalls,* 369 Md. 224, 798 A.2d 579 (2002); *Orthodox Council v. Abramson,* 368 Md. 1, 791 A.2d 129 (2002); *In re Franklin P.,* 366 Md. 306, 326–328, 783 A.2d 673, 685–686 (2001); *Peck v. DiMario,* 362 Md. 660, 766 A.2d 616 (2001); *Bowers v. Callahan,* 359 Md. 395, 754 A.2d 388 (2000); *Dennis v. Folkenberg,* 354 Md. 412, 731 A.2d 883 (1999); *Pittsburgh Corning v. James,* 353 Md. 657, 660–666, 728 A.2d 210, 211–214 (1999); *Samuels v. Tschechtelin,* 353 Md. 508, 727 A.2d 929 (1999); *Shoemaker v. Smith,* 353 Md. 143, 164–170, 725 A.2d 549, 561–563 (1999). *See also Bunting v. State,* 312 Md. 472, 477–482, 540 A.2d 805, 807–810 (1988).

**6.** See factors in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

disputed question, (2) resolves an important issue that is completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment.

(Citing *Cambridge Commons, supra,* 167 Md.App. at 228, 892 A.2d 593).

Appellant argues that the above requirements are met because: (1) the class certification order conclusively determines the disputed question of whether the action should proceed as a class action; (2) it resolves the important issue, separate from the merits of the action, of whether a class action is the appropriate vehicle to resolve the claims asserted; and (3) litigating the case as a class action will impose an "extraordinary and irreparable burden" on appellant which would be effectively unreviewable on appeal from a final judgment. We address each of these points in turn and conclude that none of the requirements are satisfied. The non-final order in this case does not fall within the scope of the collateral order doctrine.

■■■ With respect to the first and second requirements, it is difficult to imagine a class certification order that does *not,* at least initially, determine that the action will proceed as a class action, and also that class action is the proper avenue to resolve the claims. *See* Md. Rule 2–231(c). In this case, the circuit court entered a class certification order over appellant's objection. As appellant points out, class certification "escalated" the suit to include thousands of potential claims. While the number of potential claims varies with each case, appellant's case has this in common with all class actions. The very goal of a class action suit is to "overcome the impracticalities of overtly cumbersome joinder requirements," *Kirkpatrick v. Gilchrist,* 56 Md.App. 242, 249, 467 A.2d 562 (1983), and thus "escalate" the suit to include other potential claims. If this Court were to agree with appellant's interpretation of these first two requirements, virtually all class certification orders would be appealable. Maryland case law compels a different result. We explain.

In *Snowden v. Baltimore Gas & Electric Co.*, 300 Md. 555, 479 A.2d 1329 (1984), the Court of Appeals held that a denial of class certification is not appealable under the collateral order doctrine. *Id.* at 559, 479 A.2d 1329. The *Snowden* Court cited *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), with approval, noting that the *Livesay* Court held that refusal to certify a class is not appealable under the collateral order doctrine. *Snowden, supra*, 300 Md. at 562, 479 A.2d 1329. Likewise, in *Royal Financial*, we held that the collateral order doctrine does not apply to the circuit court's certification of a class action, in part because a class certification order can be revised. *Royal Financial, supra*, 183 Md.App. at 500, 961 A.2d 1161 (citing Maryland Rule 2–231(c)). We also determined that class certification orders are incapable of resolving important issues separate from the merits because "class certification involves considerations 'enmeshed in factual and legal issues comprising the plaintiff's cause of action.'" *Id.* (quoting *Snowden, supra*, 300 Md. at 562, 479 A.2d 1329).

 Appellant argues that the third requirement for review under the collateral order doctrine is satisfied because class action status will impose an "extraordinary and irreparable burden." In particular, the circuit court's "broad and unstructured" definition of the class, and the individualized nature of each vehicle purchase, will force it to spend considerable time and expense reviewing thousands of transactions to identify which customers were overcharged. Appellant further argues that the order will be effectively unreviewable because the additional time and expense required for class action cannot be effectively undone. However, this Court stated in *Royal Financial* that "class certification orders, which do not decide other issues, are ordinarily capable of effective review on appeal from a final judgment." *Royal Financial, supra*, 183 Md.App. at 500, 961 A.2d 1161. (citing *Angeletti, supra*, 358 Md. at 714–15, 752 A.2d 200). Presumably, the defendant in a class action suit—as opposed to a single plaintiff suit—will always incur additional time and expenses that cannot be undone.

Appellant contends that our holding in *Royal Financial* is not inconsistent with its position because

[t]he class ... [was] relatively small, present[ed] a relatively small number of issues, and it [was] unlikely that the expended resources of the judiciary or appellant will be wasted or so substantial, if class certification is ultimately ruled to be inappropriate, that we should take the extraordinary step of recognizing this appeal.

*Id.* at 501, 961 A.2d 1161. That statement, however, is related to our discussion in *Royal Financial* of the *Angeletti* case, and must be read in context with our discussion of *Angeletti.* There, the circuit court certified two classes of Maryland residents who were current or former users of tobacco products. *Angeletti, supra,* 358 Md. at 702, 752 A.2d 200. The defendants filed a writ of mandamus in the Court of Appeals, requesting the Court to direct the circuit court to decertify the classes. *Id.* at 703, 752 A.2d 200. The Court granted the petition because an extraordinary amount of resources would be wasted if class certification were reversed after a trial. *Id.* at 714–19, 752 A.2d 200.

In our analysis of *Angeletti* in *Royal Financial,* we found it significant that the Court of Appeals "reaffirmed its commitment to the final judgment rule" and noted that "a petition for writ of mandamus is *not* an appeal." *Royal Financial, supra,* 183 Md.App. at 501, 961 A.2d 1161 (citing *Angeletti, supra,* 358 Md. at 709, 721–22, 752 A.2d 200) (emphasis added). Interlocutory appeals under the collateral order doctrine and writs of mandamus are analyzed under different legal frameworks. The fact that this Court compared the facts of *Royal Financial* to those in *Angeletti* does not support the conclusion that we should permit an interlocutory appeal because a case involves more resources and potential class members than involved in *Royal Financial.*

Moreover, the *Angeletti* Court described the number of persons that would be affected by the Court's decision as "astronomical." *Angeletti, supra,* 358 Md. at 723, 752 A.2d 200. The class action certification encompassed all residents

of Maryland that were addicted to nicotine, as well as the estates, representatives, administrators, children, spouses, relatives and significant others of all persons who have suffered, presently suffer, or have died from injury or disease related to the use of tobacco products. *Id.* at 701, 752 A.2d 200. The Court accepted the parties' estimation that the class would be larger than those in the asbestos litigation cases and that the litigation could impact hundreds of thousands of Maryland residents. *Id.* at 733, 752 A.2d 200. This "astronomical" number is a far cry from the five or six thousand potential class members in the present case.

In *Snowden,* the Court of Appeals declined to review a denial of class action certification where potential class members presumably numbered in the thousands. *Snowden, supra,* 300 Md. at 557–58, 479 A.2d 1329. The plaintiff alleged that the defendant, Baltimore Gas & Electric Company, violated Maryland law by recording "all incoming calls relative to inquiries concerning service or billing." *Id.* at 558, 479 A.2d 1329. The *Snowden* Court did not point to the size of the class or the amount of resources that would be expended as factors in its analysis.

Likewise, the present case presents a garden variety class action. Class actions, by their very nature, always involve a large number of plaintiffs. If this Court were to announce an exception to the rule that class action certification orders are not appealable, and allow review of class action certifications involving "large" numbers of plaintiffs, the exception would swallow the rule. There is no magic number of potential class members, claims, time, or dollars spent that will render a class action certification immediately appealable.

### 3. Class Notice Orders

Although Maryland law does not permit an interlocutory appeal from a class certification order, appellate courts have entertained interlocutory appeals of class notice orders under the collateral order doctrine. *See Cambridge Commons, supra,* 167 Md.App. at 231, 892 A.2d 593. Relying heavily on

*Cambridge Commons,* appellant argues that the same principles that justify interlocutory appeal from a class notice order justify interlocutory appeal from a class certification order. We disagree.

In *Cambridge Commons,* the circuit court ordered defendant to provide a list, within 30 days, of all property owners who paid certain contested fees. *Id.* at 222, 892 A.2d 593. Defendant argued that searching records to provide the list and the cost of providing notice was unduly burdensome. *Id.* at 231, 892 A.2d 593. In holding that the class notice order was appealable under the collateral order doctrine, this Court stated that a class notice order is separate and distinct from the merits. *Id.* at 230, 892 A.2d 593. We concurred with the United States Supreme Court's analysis in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), stating:

> [The court's] order imposing 90% of the notice costs on respondents likewise falls within "that small class." It conclusively rejected respondents' contention that they could not lawfully be required to bear the expense of notice to members of petitioner's proposed class ... [and] involve[s] a collateral matter unrelated to the merits of petitioner's claims.... [A]llocation of notice costs was "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it...."

*Id.* at 231–32, 94 S.Ct. 2140 (quoting *Eisen, supra,* 417 U.S. at 172, 94 S.Ct. 2140) (internal citations omitted).

In our analysis of *Cambridge Commons,* this Court noted that, unlike the class notice order in *Cambridge Commons,* the class certification order at issue did not contain research and cost provisions, but only certified the class action, defined the class, and appointed class representatives and counsel. *Royal Financial, supra,* 183 Md.App. at 503, 961 A.2d 1161. The analysis in *Royal Financial* applies here with equal force because there is nothing qualitatively different about the class certification orders. The order in this case likewise does not

impose any costs or burdens on appellant with regard to providing notice.

### 4. Federal Jurisprudence

Maryland Rule 2–231 and Federal Rule of Civil Procedure ("FRCP") 23 are similar. Maryland state courts sometimes look to the federal class action rule and federal cases interpreting that rule for guidance. *See Angeletti, supra,* 358 Md. at 724, 752 A.2d 200. As appellees point out, however, FRCP 23(f) was amended in 1998 to expressly authorize federal courts of appeal to review orders granting or denying class certification. As we recently noted, in the intervening ten years, the Court of Appeals has shown no inclination to change Maryland Rule 2–231 to permit discretionary review of class certification orders. *Royal Financial, supra,* 183 Md.App. at 501 n. 2, 961 A.2d 1161. Significantly, Maryland Rule 2–231 does not contain a provision analogous to FRCP 23(f). This suggests that appellate review of class action certification orders, while permitted in federal courts, is not available in Maryland.

In *Royal Financial, supra,* 183 Md.App. at 496, 961 A.2d 1161, this Court undertook a very brief analysis of FRCP 23(f) and related case law. The analysis does not suggest that federal jurisprudence was dispositive of our decision. Rather, an analysis of federal cases was included only to provide tangential support for the conclusion that interlocutory review was not appropriate. The Court stated, *id.* at 503, 961 A.2d 1161:

> While the federal rule differs from the Maryland Rule, federal cases addressing when the discretion should be exercised are consistent with our conclusion in this case....
>
> * * *
>
> Even under the permissive appeal procedure in federal courts, this case likely would not be an appropriate candidate for a permissive appeal.

■ Federal courts consider five factors in determining whether to exercise discretion under FRCP 23(f) and hear an interlocutory appeal of a class certification order:

> (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate.

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144 (4th Cir.2001) (citation omitted).

■ The application of the facts in this case to the above five factors is similar to that in *Royal Financial.* First, the class certification order is likely not dispositive of the litigation because appellant intends to contest liability and damages. Second, the circuit court's certification does not contain an obvious substantial weakness. The circuit court granted the class certification order after a hearing, during which the court reviewed extensive exhibits and memoranda. The court also issued a written opinion in which all Rule 2–231 factors were addressed. Third, exercising jurisdiction over this appeal would not resolve any unsettled legal questions of general importance. Fourth, while the parties have filed dispositive motions, the circuit court has yet to rule on appellee's motion for entry of administrative order and appellant's opposition. Fifth, this Court does not perceive any future events that make appellate review more appropriate at this stage. *Cf. Royal Financial, supra,* 183 Md.App. at 503–04, 961 A.2d 1161. We therefore conclude that, even if federal jurisprudence were relevant, review would not be appropriate at this stage.

For the foregoing reasons, the appeal is dismissed for lack of jurisdiction.

APPEAL DISMISSED.

COSTS TO BE PAID BY APPELLANT.