# IN THE SUPREME COURT OF IOWA

No. 22–0326

Submitted October 10, 2023—Filed December 15, 2023

**STATE OF IOWA,**

   Plaintiff,

vs.

**IOWA JUVENILE COURT FOR PLYMOUTH COUNTY,**

   Defendant.

---

Appeal from the Iowa District Court for Plymouth County, Daniel P. Vakulskas, District Associate Judge.

The State seeks certiorari review of a juvenile court order vacating an earlier order waiving jurisdiction over a juvenile to the district court. **WRIT SUSTAINED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Genevieve Reinkoester (argued), Assistant Attorney General, for plaintiff.

Joel E. Fenton (argued) of Law Offices of Joel E. Fenton, PLC, Des Moines, for defendant.

MANSFIELD, Justice.

### I. Introduction.

This case, involving the prosecution of a seventeen-year-old for sexual exploitation of a minor and possession of child pornography, presents the question whether a juvenile court can reclaim jurisdiction over a case that it has previously waived to the district court for criminal prosecution. We conclude that there is no provision in Iowa law for such a "revocation of waiver," and therefore vacate the order of the juvenile court that attempted to bring about such a result.

### II. Background Facts and Proceedings.

**A. Investigation and Filing of Delinquency Petition.** In January 2020, the Plymouth County Sheriff's Department received a tip from the Internet Crimes Against Children Task Force that child pornography could be circulating in the area. Deputy Struve conducted an investigation. Various subpoenas led to I.S., who was almost sixteen years old at the time. Deputy Struve searched I.S.'s phone and found what he believed to be child pornography. Based on his own life experience, Deputy Struve believed the children in the images were between seven and fifteen years old, some potentially older. Deputy Struve also discovered that I.S. had communicated with others, including a fourteen-year-old, to receive these images.

Ultimately, Deputy Struve found approximately 500 photos and videos of child pornography on I.S.'s cell phone. I.S. confessed that he would sometimes "bait" and pretend to be a female to get other minors to send him these images and videos.

On February 4, 2021, a delinquency petition was filed in the Iowa Juvenile Court for Plymouth County charging I.S. with one count of sexual exploitation of a minor, in violation of Iowa Code Section 728.12(1) (2020), a class "C" felony; and four counts of purchasing or possessing a depiction of a minor engaging in

a sex act, first offense, in violation of Iowa Code Section 728.12(3), an aggravated misdemeanor.

At this point, I.S. was seventeen years old. He had no prior record and had been receiving A's in school and recounted having a 3.98 grade point average. While in high school, I.S. was also taking online college courses. I.S. began therapy after these events. He started at one facility with a therapist, who then moved to a new facility. I.S. eventually was taken on as a client at this new facility. I.S. said he would comply with recommendations for outpatient treatment in relation to his charges and agreed that such treatment would help him. A consulting clinical psychologist, Dr. Angela Stokes, emphasized in her reports that I.S. had committed "noncontact offenses," and was seeking materials that displayed minors around his own age. She believed these factors weighed in favor of his ability to be rehabilitated.

**B. Waiver from Juvenile Court to District Court.** The county attorney filed a motion to waive jurisdiction to the district court, where I.S. would be tried as an adult. According to the motion, the assigned juvenile court officer (JCO) was specifically concerned with:

> A. The nature and severity of the offenses and the extended period of time the child has been trading child pornography links with others and the approximate ages of the children involved, as young as seven years old.

> B. The child's age and the length of time outpatient treatment in the community usually takes is 12-18 months and by the time the child reaches disposition the only viable option for treatment would be the State Training School. Other residential facilities do not have licensing to keep juveniles after they reach majority.

> C. The challenges of providing supervision and treatment to clients that are past their 17th birthday because their mindset operates differently when they are close to becoming legal adults.

In Iowa, a juvenile court can waive jurisdiction if the juvenile is over fourteen years old, there is probable cause to believe that the juvenile committed a delinquent act that would constitute a public offense, and the state establishes that there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction and the child is adjudicated to have committed the delinquent act. Iowa Code § 232.45(6) (2021). In determining the chances of rehabilitation, the court can consider the nature and circumstances of the alleged delinquent act, the juvenile's prior interactions with juvenile authorities, and the options available to the juvenile court for rehabilitation and treatment as well as the options that would be available to the district court following a waiver. *Id.* § 232.45(8).

I.S. resisted the State's motion. The contested issue was the prospect of rehabilitating I.S. if the case continued in juvenile court.

On March 8, the JCO filed his waiver investigation report. His report discussed the dilemma posed by I.S.'s age (less than a year from his eighteenth birthday) as contrasted with the time that would be required to complete sex offender treatment (eighteen to twenty-four months for outpatient treatment). The JCO noted that in district court, I.S. could potentially receive a deferred judgment and a period of probation as needed:

> The alleged offenses for which [I.S.] is now in front of the Court are very serious, and therefore, it must require consistency and longer monitoring services including probation. Eighteen months is relatively a short time to provide services to [I.S.] who[] has watched, sent, and received child pornography through different social media applications at different times of the day and night and has done this behavior in secrecy. Avoidance and secrecy can not be easily ignored in this case because these two dynamics are not resolved quickly, or even set a timeframe as to how long it would take to assess and treat adequately more in depth these behaviors, but it would be more appropriate to examine the same in an adequate treatment process without rushing with enough time to address the current and underlying behaviors.

Dr. Stokes personally evaluated I.S. and prepared a report on April 20 that disagreed with the JCO.[1] She noted that I.S. was already in certain treatment with the support of his family. She determined that I.S. was at "very low risk of committing a contact offense and low risk of reoffending a noncontact offense." She characterized I.S.'s prognosis as "favorable" and felt that he could complete supervised therapy within twelve to eighteen months. She concluded, "Based on the low risk of recidivism and his evaluation results, [I.S.] should be given the opportunity for treatment as an eligible juvenile who is not likely to reoffend."

After a hearing on April 23, the juvenile court entered an order on May 3 waiving jurisdiction to the district court.[2] The court accepted the State's position that "there is simply not enough time for [I.S.] to complete treatment (if adjudicated in juvenile court) before [the] juvenile court would lose jurisdiction (at maximum when he turns nineteen and one-half)." More specifically, the court reasoned,

> [T]he Court respects Dr. Stokes' optimism about [I.S.'s] outlook; however, it does not convince the Court that [I.S.] has a reasonable prospect of rehabilitating himself in the short time he has left in juvenile court. [I.S.] appears to have some deep-seated issues that need to be addressed, in addition to anything related to his alleged crimes. [The JCO] testified credibly that he has never seen a child complete outpatient treatment in the time [I.S.] has left.
>
> The Court believes the State has established that, because of the time left, there are no reasonable prospects of rehabilitation for him in juvenile court. [I.S.] may need an in-depth treatment that takes time. It would be in his best interest to waive jurisdiction to adult court so he may address those issues in a jurisdiction with more time.

Two weeks later, I.S. moved for reconsideration of the court's order pursuant to Iowa Rule of Civil Procedure 1.904(2), identifying various points that

---

[1]According to the report, Dr. Stokes assessed I.S. on March 13.

[2]The appellate record does not include a transcript of the waiver hearing.

he believed the juvenile court had overlooked. The juvenile court denied the motion.

**C. Filing of Trial Information and Other Proceedings in District Court.** On June 7, a trial information was filed in the district court. I.S. entered a written plea of not guilty. The district court set a pretrial conference and a trial date of December 21.

On July 8, I.S. filed a motion for reverse waiver in the district court pursuant to Iowa Code section 803.6. The State resisted. At the hearing that ensued later in the month, I.S. made an offer of proof of additional evidence that would support a waiver. This included evidence concerning programs that I.S. might be able to complete within the relevant juvenile court deadlines. The district court concluded that it did not have authority to transfer the case to juvenile court because the case did not fall within section 803.6(1). However, the district court added that "the Juvenile Court would still have jurisdiction under Section 232.8 to reconsider its own waiver Order."

**D. Motion in Juvenile Court to Modify Earlier Waiver Pursuant to Iowa Rule of Civil Procedure 1.1012(6).** Nearly two months later, on September 20, I.S. filed a motion in the juvenile court to modify the order waiving jurisdiction pursuant to Iowa Rule of Civil Procedure 1.1012(6). I.S. maintained that he had additional information concerning programs that had not been available at the time of the original waiver hearing, and that he had been "consistently attending treatment with 100% attendance since April 2, 2021 (with the exception of one excused absence due to illness)." I.S. attached an updated report from Dr. Stokes recommending outpatient therapy at the Rosecrance Jackson Recovery Center and, if this failed, an intensive treatment program at Woodward Academy.

Over the State's resistance, the juvenile court entered a "ruling re jurisdiction," concluding that it had jurisdiction to review its prior waiver order

from May. It set an evidentiary hearing on the merits to take place on November 17.[3]

**E. Second Waiver Hearing in Juvenile Court.** At the second waiver hearing in juvenile court, Dr. Stokes testified that Rosecrance would be an available placement, although Woodward was not available if intensive outpatient treatment was unsuccessful. Dr. Stokes cited several other residential programs as an alternative to Woodward, some of which were located outside Iowa. She testified that she had not had time to obtain information on these potential placements prior to the original waiver hearing.

Dr. Stokes noted that I.S. had committed a "noncontact offense." She added that regarding the age of the children in the child pornography viewed by I.S.:

> [T]he way that those pictures were identified and described didn't give me, necessarily, the detail that I would have liked, as far as being able to look at that developmental piece, but it did seem to me, and [I.S.] certainly reported, that as he was getting older, he was more interested in age- -- age-appropriate [children].

Dr. Stokes also testified that I.S. had been undergoing therapy through a family practice group while awaiting disposition of his case. In conclusion, she opined that I.S. would be able to complete the necessary treatment before he turned nineteen-and-a-half years old.

On cross-examination, Dr. Stokes testified that she could not have obtained the same information on available treatment options during the three-day time span between the preparation of her evaluation report and the original waiver hearing. She added that when she does an evaluation, such as was

---

[3]That hearing was delayed to January 2022 because the State filed an untimely certiorari petition with this court challenging the November 17, 2021 order, which we denied.

contained in her April 20, 2021 report, "the State is very particular that I do only what I'm being asked to do, which is to evaluate."

I.S. also took the stand and testified that he had been undergoing therapy and that he would be willing to undergo outpatient treatment.

Lastly, the JCO testified. He stated that his original recommendation for waiver to district court had not changed, even in light of the information presented that day. The State also reiterated its argument that the juvenile court lacked jurisdiction to reconsider its earlier waiver order. In addition, the State maintained that the evidence submitted was not new, and that it would have been available prior to the original April 23, 2021 waiver hearing. According to the State, the only thing that had changed was that "additional time has passed," so that I.S. was now very close to eighteen.

On February 7, 2022, the juvenile court entered an order vacating and modifying its ruling from nine months earlier waiving I.S.'s case to the district court. The court explained that I.S. had submitted new evidence on inpatient placement options not discoverable at the time of the previous hearing. The court noted I.S.'s commitment to his current and future therapy and noted that the offense had been a "noncontact." The court summarized, "The Court finds that, with this newly discovered evidence, the State is unable to show there are not reasonable prospects to rehabilitate [I.S.] in the time left in juvenile court."

The State timely applied for a writ of certiorari, and we granted the petition. The State raises two points on appeal. First, it argues that when the juvenile court initially waived jurisdiction to the district court, it no longer had jurisdiction or authority to modify or vacate the waiver order. Second, in the alternative, the State argues that even if the juvenile court had the jurisdiction or authority to reconsider and revoke the waiver order, it abused its discretion in doing so under the circumstances presented here. According to the State, the

evidence presented did not meet the rule 1.1012(6) standards for reopening a prior order.

### III. Standard of Review.

"[W]e review the juvenile court's interpretation of statutes for correction of errors at law." *State v. Crooks*, 911 N.W.2d 153, 161 (Iowa 2018) (alteration in original) (quoting *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014)).

"We normally review proceedings in juvenile court de novo. When the issue on appeal relates to statutory discretion exercised by the juvenile court, however, we review the evidence de novo to determine whether the discretion was abused." *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014) (citation omitted). "In order to show an abuse of discretion, a party must show the juvenile court's action was unreasonable under the attendant circumstances." *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Iowa courts "find an abuse of discretion where the juvenile court's decision rests on grounds clearly untenable or to an extent clearly unreasonable." *In re B.A.*, 737 N.W.2d 665, 667–68 (Iowa Ct. App. 2007).

### IV. Legal Analysis.

The threshold question we must answer is whether the juvenile court had jurisdiction or authority as of February 7, 2022, to take back its original May 3, 2021 order waiving jurisdiction over I.S.'s case to the district court. If it didn't, then we must reverse the February 7 order.[4]

---

[4]In *State v. Erdman*, we recently clarified that jurisdiction as used in Iowa Code sections 232.8 and 232.45 does not refer to subject matter jurisdiction and can be waived if a party does not make a timely objection. 996 N.W.2d 544, 549 (Iowa 2023). Thus, in *Erdman* we upheld a juvenile's criminal conviction even though the case had been mistakenly commenced in juvenile court, rather than district court. *Id.* at 549, 552. As we explained in that case, " 'Jurisdiction,' as it is referenced in Iowa Code sections 232.8 and 232.45, refers to the court's authority to adjudicate the charges, not its subject matter jurisdiction over such cases." *Id.* at 549.

*State v. Emery*, a case we relied upon in *Erdman*, pointed out that a waiver of jurisdiction under sections 232.8 and 232.45 in effect shifts "personal jurisdiction" over the child from the juvenile court to the district court. 636 N.W.2d 116, 123 (Iowa 2001) ("These statutes clearly focus on jurisdiction of the child, i.e., jurisdiction over a particular case, rather than subject

Iowa Code section 232.45 allows a juvenile court, under specified circumstances, to waive its jurisdiction over a juvenile who is charged with committing a public offense so that the juvenile may be prosecuted as an adult. As relevant, the statute provides:

> 1. After the filing of a petition which alleges that a child has committed a delinquent act on the basis of an alleged commission of a public offense and before an adjudicatory hearing on the merits of the petition is held, the county attorney or the child may file a motion requesting the court to waive its jurisdiction over the child for the alleged commission of the public offense . . . .
>
> . . . .
>
> 6. At the conclusion of the waiver hearing the court may waive its jurisdiction over the child for the alleged commission of the public offense . . . if all of the following apply:
>
> *a.* The child is fourteen years of age or older.
>
> *b.* The court determines . . . that there is probable cause to believe that the child has committed a delinquent act which would constitute the public offense.
>
> *c.* The court determines that the State has established that there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction over the child and the child is adjudicated to have committed the delinquent act, and that waiver of the court's jurisdiction over the child for the alleged commission of the public offense would be in the best interests of the child and the community.

*Id.* § 232.45(1), (6); *see also id.* § 232.8(3)(*a*) ("The juvenile court, after a hearing and in accordance with the provisions of section 232.45, may waive jurisdiction of a child alleged to have committed a public offense so that the child may be prosecuted as an adult or youthful offender for such offense in another court.").

---

matter jurisdiction."). Whether we use the term "personal jurisdiction" or "authority," the analysis is the same.

The juvenile court followed this procedure and waived jurisdiction over I.S.'s case on May 3, 2021. Approximately a month later, a trial information was filed against I.S. in the district court and the criminal case went forward.

Nothing in chapter 232 empowers the juvenile court to rescind a waiver of jurisdiction over a juvenile and take back a case from the district court, as the juvenile court sought to do on February 7, 2022. Again, a criminal case was pending in the district court. Neither the Iowa Code nor the Iowa Rules of Criminal Procedure authorize a criminal case to be terminated at the behest of a juvenile court. True, a district court (not a juvenile court) may transfer jurisdiction over a juvenile to a juvenile court under certain circumstances, but as the district court recognized, those circumstances didn't exist here. *See id.* § 803.5(1). Transfer is specifically prohibited if the juvenile court previously waived jurisdiction to the district court, as had occurred here. *Id.*

Also, section 232.45(7)(*b*) authorizes a juvenile court to maintain *partial* jurisdiction when the juvenile is waived to the district court as a "youthful offender." *Id.* § 232.45(7)(*b*). Specifically, section 232.45(7)(*b*) provides that "[t]he court shall retain jurisdiction over the child for the purpose of determining whether the child should be released from detention under section 232.23." *Id.* But I.S. was too old to be treated as a youthful offender, and he was not treated as one. *See id.* § 232.45(7)(*a*) (providing "the child may be prosecuted as a youthful offender," if "[t]he child is twelve through fifteen years of age"). This limited provision for retaining partial jurisdiction over youthful offenders (not someone like I.S.) also tends to confirm that in other circumstances, jurisdiction is not "retain[ed]"; it is gone. *Id.* § 232.45(7)(*b*).

We would consider the question before us to be one of statutory interpretation if there were some statute or rule arguably supporting I.S.'s position. We are aware of none. I.S. cites only to Iowa Rule of Civil Procedure

1.1012, which allows a "final judgment or order" to be vacated under some circumstances. But the order waiving jurisdiction to the district court wasn't a final judgment or order. I.S.'s case was not over; it was continuing in another form in another court. Rule 1.1012 allows a court to unwind its own final judgment and order; it does not allow a court to take back a case from another court. *See id.* Courts also have "inherent authority to manage proceedings on their dockets and in their courtrooms," *Davis v. Iowa Dist. Ct.*, 943 N.W.2d 58, 62 (Iowa 2020), but we are not aware of any inherent authority to manage proceedings taking place in other courts. *See Bergman v. Nelson*, 241 N.W.2d 14, 16 (Iowa 1976) (noting that a transfer order "is not simply a disclaimer of juvenile court jurisdiction," but "binds the juvenile to the jurisdiction of the district court for criminal prosecution"), *overruled on other grounds by State v. Williams*, 895 N.W.2d 856 (Iowa 2017).

One possible analogy to consider is that of a transfer of venue. Historically, we do not allow transferring courts to rescind venue transfer orders. In *Iowa Loan Co. v. Wilson*, we reversed a court for attempting to set aside a prior transfer of venue. 124 N.W. 201, 202 (Iowa 1910). There, the superior court for Cedar Rapids had transferred venue of a case to the district court for Linn County. *Id.* at 201. Later, it sua sponte vacated that transfer because the moving party had not paid the costs of transfer as previously ordered. *Id.* We reversed, noting that where a transfer order is unconditional on its face, the district court loses jurisdiction over the case:

> In Carroll County v. American Emigrant Co., 37 Iowa, 371, an order transferring the cause from Carroll to Polk [C]ounty was entered, based on an agreement to such change; but at the next term of court, on motion to vacate because of nothing having been done to effect the change, the court set aside the order and reinstated the case. The ruling was reversed on the ground that the order granting the change, being unconditional, deprived the court entering it of jurisdiction.

*Id.* at 201–02; *see also Brown v. Thompson,* 14 Iowa 597, 597–98 (1863) ("The venue of this cause was changed from Monona to Greene County, from the fourth to the fifth judicial district. At a succeeding term the District Court of Monona County, on motion of plaintiff, re-docketed the cause and ordered the same to be set down for a hearing as though no change had been made. In this there was error."); *Farr v. Fuller,* 12 Iowa 83, 84 (1861) ("The order for the change of venue was unconditional. After this the District Court of Story, and not that of Polk, was the proper tribunal to apply to for any order or relief. The District Court of Polk [C]ounty had no longer jurisdiction of the cause."); *Campbell v. Thompson,* 4 Greene 415, 415 (Iowa 1854) ("After granting the change of venue, the district court of Marion [C]ounty had no further jurisdiction over the subject matter or the parties."). We think the analogy works here. Once another court has a case, the court that transferred the case or waived jurisdiction loses jurisdiction over the parties. *See State v. Emery,* 636 N.W.2d 116, 123 (Iowa 2001) (explaining that the transfer provisions affect jurisdiction over the parties).

Further, there are sound policy reasons not to read authority for a revocation of waiver into chapter 232. *See* Iowa Code § 4.4(3) (setting forth the presumption that "[a] just and reasonable result is intended" when the legislature enacts a statute). A reconsideration of a prior waiver could lead to disruption of proceedings and friction between the district court and the juvenile court. What if the juvenile court tried to reclaim jurisdiction the day before the criminal trial was about to begin in district court? What if the juvenile court tried to reclaim jurisdiction after the juvenile had been found guilty (but before sentencing and the entry of judgment)? What if the juvenile court and the district court disagreed as to whether the criminal case should be terminated? Additionally, the grounds cited by the juvenile court here as reasons for vacating its prior waiver order are hardly unique. The juvenile court noted that the I.S.

had discovered additional placement possibilities since the original waiver hearing and had provided evidence of his commitment to therapy during the period leading up to his criminal trial. But if those relatively common occurrences are sufficient to undo a prior waiver order, it would be difficult for a district court presiding over a criminal case involving a juvenile to have much confidence that it would actually end up trying the case.

I.S. invokes the expertise of juvenile courts in dealing with juvenile offenders and chapter 232's goals of serving the best interests of the child and the best interests of the community. Iowa Code § 232.45(6)(*c*). Those are undoubtedly important considerations. But the legislature presumably took those matters into account when it made provision for a single "waiver hearing" to occur "[a]fter the filing of [the] petition." *Id.* § 232.45(1)–(2).

Although juvenile court systems vary from state to state, we note that other jurisdictions have turned down efforts by juvenile courts to take back waivers of jurisdiction.

In Maryland, the state's highest court has held that a juvenile court cannot retake jurisdiction once it has waived a juvenile to the district court. *In re Franklin P.,* 783 A.2d 673, 690 (Md. 2001). There, a juvenile was charged in several delinquency petitions when he was fifteen and sixteen years old. *Id.* at 676. The juvenile court waived its jurisdiction to the criminal court for each of the proceedings. *Id.*

Subsequently, the juvenile filed a motion asking the juvenile court to reconsider its waiver on the basis of evidence that the juvenile "could be placed in an appropriate facility immediately." *Id.* at 677, 679–80. In response, the juvenile court revoked the waiver orders and returned the cases to its jurisdiction. *Id.* at 680. Meanwhile, the state had obtained criminal indictments against the juvenile. *Id.* at 677. Relying on the pendency of those indictments,

the state declined to put on a case in juvenile court, which led that court to dismiss the petitions before it. *Id.* Thereafter, the juvenile moved to dismiss the charges against him in the criminal court. *Id.* The criminal court denied the motion, reasoning that the juvenile court had previously relinquished jurisdiction "upon its order waiving jurisdiction to the criminal court." *Id.*

On appeal, the Maryland Court of Appeals upheld the criminal court's refusal to dismiss the charges, concluding that the juvenile court lacked authority to reconsider its prior waiver order. *Id.* at 689–90. As the court explained,

> [J]urisdiction in this case (the authority to try it) was originally in the Juvenile Court; it was transferred to the Circuit Court and it remains there. Under the circumstances of the case *sub judice*, the Juvenile Court cannot rescind its past juvenile jurisdiction waiver order.

*Id.* at 690.

Similarly, the Rhode Island Supreme Court made clear that a juvenile court lacked authority to reconsider a waiver in *State v. Husband*, 162 A.3d 646, 653 (R.I. 2017). In that homicide case, the court originally waived jurisdiction over the juvenile to adult criminal court. *Id.* at 652. Later, the juvenile sought to reopen the waiver hearing after the state advanced a new theory that another individual had actually been the shooter. *Id.* The juvenile court declined to do so, and the Rhode Island Supreme Court upheld that determination. *Id.* at 652–53. The latter court explained jurisdiction was "vested completely in the adult court" following waiver and that the juvenile court "properly refused [the juvenile's] repeated attempts to reopen the waiver hearing and correctly ruled that it had no authority to entertain his petition." *Id.* at 653 (quoting *State v. Day*, 911 A.2d 1042, 1053 (R.I. 2006)).

Likewise, the Wisconsin Supreme Court has held that a juvenile court cannot reconsider a waiver order "*after* the state has filed a criminal complaint, and the criminal court has assumed jurisdiction." *State v. Vairin M.* (*In re Vairin M.*), 647 N.W.2d 208, 216 (Wis. 2002). The court did conclude "that the juvenile court retains jurisdiction and may reconsider its own waiver order until a criminal complaint is filed." *Id.*

The case arose after two juvenile delinquency petitions were filed against a fifteen-year-old, alleging seven delinquent acts in total. *Id.* at 210–11. The juvenile court waived jurisdiction for both cases and criminal charges were filed. *Id.* at 211. Later, the juvenile moved for the waivers to be reconsidered because, among other things, the juvenile court "had heard 'misleading' evidence regarding the [placement options for] a sixteen-year-old convicted as an adult." *Id.* Further, the defense was concerned "about the possibility of [the juvenile] being deported if he were convicted in adult criminal court of the crimes with which he had been charged." *Id.* The juvenile court denied reconsideration. *Id.* at 213.

> The juvenile appealed, and Wisconsin's highest court concluded,
>
> As soon as the criminal court assumes jurisdiction, it assumes exclusive jurisdiction, and the juvenile court loses jurisdiction to reconsider its own waiver order. However, until the criminal complaint is filed, the juvenile court retains jurisdiction, and the problems of concurrent jurisdiction, or of one court dismissing an action that is before another court, are not presented.

*Id.* at 216. The court also opined that "if a juvenile has compelling new grounds bearing on waiver, he or she may file a motion with the criminal court asking the court to relinquish its jurisdiction by transferring the matter to juvenile court." *Id.* at 219.

In a Georgia case, the court of appeals held that a superior court could not revoke a prior order transferring a case to juvenile court. *K.G.W. v. State*, 231

S.E.2d 421, 424–25 (Ga. Ct. App. 1976). As the court put it, "It is anachronistic, if not a contraposition, for the state to contend that the superior court transferred jurisdiction to the juvenile court, yet retained jurisdiction to revoke the order." *Id.* at 424. To bring home the logic of its ruling, the court added that "this issue can operate both ways. If the state contends that a superior court can revoke its transfer of jurisdiction after the juvenile court has acted thereon, then why should not the juvenile court have the same option of revoking its transfer of jurisdiction after the superior court had begun the trial of the defendant?" *Id.* at 425. Such a result, in the Georgia court's view, would be improper. *Id.*

Because we find that the juvenile court did not have the ability to reconsider and revoke its waiver of jurisdiction over I.S., we need not consider the State's alternative argument that it abused its discretion in doing so.

**V. Conclusion.**

For these reasons, we sustain the writ, we vacate the juvenile court's revocation of its waiver of jurisdiction, and we remand with the expectation that any further proceedings will occur in the district court.

**WRIT SUSTAINED AND REMANDED.**